### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **BETSY FEIST**, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | **CASE NO. 11 CIV 5436 (JGK)** |
| **RCN CORPORATION** and **PAXFIRE, INC**., | ) ) ) | |
| Defendants. | ) ) | |

### ANSWER, AFFIRMATIVE DEFENSES, AND
### COUNTERCLAIMS OF DEFENDANT PAXFIRE, INC. TO PLAINTIFF'S
### CLASS ACTION COMPLAINT

Defendant PAXFIRE, INC. ("Paxfire"), by its undersigned attorney, answers the Class

Action Complaint of Plaintiff BETSY FEIST and asserts Affirmative Defenses to such

Complaint.  Further, acting as Counterclaim Plaintiff, Paxfire brings against Counterclaim

Defendant BETSY FEIST the following claims under New York law: tortious interference in

Paxfire's contracts with its corporate customers, and tortious interference with Paxfire's business

relationships with its corporate customers, all such corporate customers including Internet

Service Providers, advertisers, aggregators, and other companies.

Paxfire seeks compensatory and punitive damages for these intentional torts in an

amount in excess of FIFTY MILLION DOLLARS ($50,000,000).

Paxfire states as follows:

# ANSWER

1.      Denied.

2.      Paxfire admits that RCN is in part an Internet Service Provider; that Internet Service Providers ("ISPs") often provide access to the Internet for their customers (known as "End Users" or "Users"); that Users often use browsers when accessing the Internet; and that IP addresses can change frequently.   Paxfire denies all remaining allegations in this paragraph.

3.      Denied.

4.      Paxfire denies that it was involved in any misconduct.  Paxfire lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph.

5.      Paxfire lacks sufficient information to admit or deny the allegations in this paragraph.

6.      Paxfire does not dispute that Betsy Feist is an individual who resides in New York.  Paxfire denies that any searches of Ms. Feist were redirected or intercepted by Paxfire via Paxfire-based proxy servers.  Paxfire lacks sufficient information to admit or deny the remaining allegations in this paragraph.

7.      Paxfire admits that it is incorporated in Delaware, and has corporate headquarters in Sterling, Virginia.  Paxfire also admits that it provides hardware and software devices to ISPs within the United States ("Paxfire technology"), as part of the services provided by those ISPs to their customers.  Paxfire admits that its webpage contains the following post:

> Paxfire is the proven industry leader in monetizing Address Bar Search and DNS Error traffic for Network Operators. Through our carrier-grade technology, we generate millions of dollars a month in new advertising revenue for our partners by enabling them to participate in the booming $20 billion a year search advertising market. Our service improves the end-user browsing experience and can be deployed rapidly across all network types at no cost to the Network Operator.

Paxfire denies all remaining allegations in this paragraph.

8.      Paxfire admits that it provides its services to ISPs at no upfront expense to the ISPs; that it processes mistyped uniform resource locators ("urls"), and urls that do not resolve to Internet Protocol addresses ("IP addresses") that exist on the Internet, using hardware and software devices, and that it shares revenue generated by such means with those ISPs to which it provides its technology.  Paxfire denies all remaining allegations in this paragraph.

9.      Denied.

10.     Paxfire admits that Defendant RCN provides Internet service.  Paxfire lacks sufficient knowledge or information to admit or deny all remaining allegations in this paragraph.

11.     Paxfire admits that the Plaintiff purports to assert federal causes of action, and that the Court has federal-question jurisdiction over those causes of action.  Paxfire denies all remaining allegations in this paragraph.

12.     Denied.

13.     Paxfire admits that it provided its technology to Defendant RCN.  Paxfire denies all remaining allegations in this paragraph.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Denied.

18.     Denied.

19.     Denied.

20.     Denied.

21.     Denied.

22.     Denied.

23.     Paxfire lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

24.     Denied.

25.     The quoted and referenced language from Joseph Turow, Jennifer King, Chris Hoofnagle, Amy Bleakley, and Michael Hennessy, Americans Reject Tailored Advertising and Three Activities that Enable it (Sept. 29, 2009), and the Federal Trade Commission Preliminary Staff Report, Protecting Consumer Privacy in an Era of Rapid Change at 24 (Dec. 1020) are immaterial to all issues in this Complaint and require no response from Paxfire; and Paxfire has moved to strike this language.  To the extent that any response is necessary to any allegations in this paragraph, Paxfire denies all such allegations.

26.     The allegations in this paragraph are immaterial to all issues in this Complaint and require no response from Paxfire; and Paxfire has moved to strike this language.  To the extent that any response is necessary to any allegations in this paragraph, Paxfire denies all such allegations.

27.     The allegations in this paragraph are immaterial to all issues in this Complaint and require no response from Paxfire; and Paxfire has moved to strike this language.  To the extent that any response is necessary to any allegations in this paragraph, Paxfire denies all such allegations.

28.      Paxfire admits that the Customer Privacy Notice posted by Defendant RCN at any time has been what RCN posted on its website at such time.  Paxfire lacks sufficient knowledge or information to admit or deny the allegations in this paragraph pertaining to the internal practices of RCN.  Paxfire denies all remaining allegations in this paragraph.

29.     Paxfire admits that the Online Policies posted by Defendant RCN at any time has been what RCN may have posted on its website at such time.  Paxfire denies all remaining allegations in this paragraph.

30.     Denied.

31.     Denied.

32.     Denied.

33.     The allegations in this paragraph comprise legal conclusions and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire admits that Plaintiff purports to bring this action on behalf of three classes, but denies the factual existence of and legal sufficiency of each of such classes; and Paxfire denies all remaining allegations in this paragraph.

34.     Paxfire admits that the Plaintiff excludes from her purported classes the persons described in this paragraph.

35.     Paxfire admits that the classes, as defined by the Plaintiff, include thousands of members.  Paxfire denies that the class definitions are appropriate, and denies all remaining allegations in this paragraph.

36.     The allegations in this paragraph comprise legal conclusions and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

37.     The allegations in this paragraph comprise legal conclusions and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

38.     The allegations in this paragraph comprise legal conclusions and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

39.     The allegations in this paragraph comprise legal conclusions and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

40.     Paxfire incorporates the above allegations as if fully set forth herein.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

49.     Paxfire incorporates the above allegations as if fully set forth herein.

50.     Paxfire admits that the Plaintiff purports to bring this action against Defendant RCN under the Virginia Consumer Protection Act, but denies the applicability of this Act to the conduct of RCN and otherwise to this action.  To the extent that a response is required from Paxfire for any additional allegation in this paragraph, Paxfire denies all such allegations.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Paxfire admits that the Plaintiff and the putative class members, if any, seek the relief specified in this paragraph, but deny the applicability of any such relief.

58.     Paxfire admits that the Plaintiff and the putative class members, if any, seek the relief specified in this paragraph, but deny the applicability of any such relief.

59.     Paxfire admits that the Plaintiff and the putative class members, if any, seek the relief specified in this paragraph, but deny the applicability of any such relief.

60.     Paxfire incorporates the above allegations as if fully set forth herein.

61.     The allegations in this paragraph comprise legal conclusions and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

62.     The allegations in this paragraph comprise legal conclusions and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Paxfire incorporates the above allegations as if fully set forth herein.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Paxfire incorporates the above allegations as if fully set forth herein.

71.     Denied.

72.    Denied.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

77.    Denied.

78.    Denied.

79.    Paxfire incorporates the above allegations as if fully set forth herein.

80.    The allegations in this paragraph do not address any claims pertaining to Paxfire, and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

81.    The allegations in this paragraph do not address any claims pertaining to Paxfire, and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

82.    The allegations in this paragraph do not address any claims pertaining to Paxfire, and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

83.    The allegations in this paragraph do not address any claims pertaining to Paxfire, and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

84.    The allegations in this paragraph do not address any claims pertaining to Paxfire, and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

85.     Paxfire incorporates the above allegations as if fully set forth herein.

86.     The allegations in this paragraph do not address any claims pertaining to Paxfire, and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

87.     The allegations in this paragraph do not address any claims pertaining to Paxfire, and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

88.     The allegations in this paragraph do not address any claims pertaining to Paxfire, and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

89.     The allegations in this paragraph do not address any claims pertaining to Paxfire, and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

90.     The allegations in this paragraph do not address any claims pertaining to Paxfire, and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

91.     The allegations in this paragraph do not address any claims pertaining to Paxfire, and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

92.     The allegations in this paragraph do not address any claims pertaining to Paxfire, and require no response from Paxfire.  To the extent that a response is required from Paxfire for any allegation in this paragraph, Paxfire denies all such allegations.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense
(Consent: ECPA)

Under 18 U.S.C. § 2511(d), Defendant Paxfire is not liable for any violations of the

Electronic Communications Privacy Act because all customers ("Users") of Defendant RCN

Corporation ("RCN") and other Internet Service Providers ("ISPs") using Paxfire technology had

given prior implied consent to the use of Paxfire technology.  The privacy policies of RCN and

such other ISPs informed customers that their Internet traffic, comprised of electronic

communications, could be used to deliver or facilitate the delivery of web pages of trademark

holders and of targeted advertising; and provided customers with the ability to opt out of the use

of Paxfire technology.

### Second Affirmative Defense
(Waiver: ECPA)

Defendants are not liable for any alleged violations of the Electronic Communications

Privacy Act, because Users waived any such claims arising from the use of Paxfire technology.

The privacy policies of Defendant RCN and all other ISPs that used Paxfire technology informed

customers that their Internet traffic could be used to deliver or facilitate the delivery of web

pages of trademark holders and of targeted advertising; and provided customers with the ability

to opt out of the use of Paxfire technology.

### Third Affirmative Defense
(Ordinary Course of Business: ECPA)

Pursuant to 18 U.S.C. § 2510(5)(a)(ii), Defendant Paxfire is not liable for any alleged

violations of the Electronic Communications Privacy Act because the use of Paxfire technology,

and any use of that technology to process communications of Users, or to deliver or facilitate the

delivery of web pages of trademark holders and of targeted advertising, was in the ordinary course of business of Defendant RCN and all other ISPs that used Paxfire technology.

### Fourth Affirmative Defense
(No Intent: ECPA)

Pursuant to 18 U.S.C. § 2511(1), Defendant Paxfire is not liable for any alleged violations of the Electronic Communications Privacy Act because the use of Paxfire technology, and any use of that technology to process the electronic communications of Users, was done without the intention to intercept such communications.

### Fifth Affirmative Defense
(Consent: Conversion, Unjust Enrichment, N.Y. Gen. Business Law)

The claims of Plaintiff and putative class members, if any, for conversion, unjust enrichment, and violation of the New York General Business Law are barred, in whole or in part, by consent.  The privacy policies of Defendant RCN and all other ISPs that used Paxfire technology informed customers that their Internet traffic could be used to deliver or facilitate the delivery of web pages of trademark holders and of targeted advertising; and provided customers with the ability to opt out.

### Sixth Affirmative Defense
(Waiver: Conversion, Unjust Enrichment, N.Y. Gen. Business Law)

Defendant Paxfire is not liable for any alleged conversion, unjust enrichment, and violation for invasion of the New York General Business Law, because Users waived any such claims arising from the use of Paxfire technology.  The privacy policies of Defendant RCN and all other ISPs that used Paxfire technology informed customers that their Internet traffic could be used to deliver or facilitate the delivery of web pages of trademark holders and of targeted advertising; and provided customers with the ability to opt out.

**Seventh Affirmative Defense**
(Disclaimer of Liability)

The claims of Plaintiffs and putative class members, if any, are barred, in whole or in part, by a disclaimer of liability in the Acceptable Use Policies and other agreements (or the equivalents thereof) of Defendant RCN and all other ISPs that used Paxfire technology, which limits claims in any way connected to the networks of RCN and such other ISPs.

**Eighth Affirmative Defense**
(Preemption)

The claims of Plaintiffs and putative class members, if any, of conversion, unjust enrichment, and any violation of the New York General Business Law are barred by preemption. The Electronic Communications Privacy Act, 18 U.S.C. ¶ 2510 *et al.*, sets forth the exclusive remedy for conduct that it covers.

**Ninth Affirmative Defense**
(Statute of Limitations)

The claims of Plaintiffs and putative class members, if any are barred by the applicable statute of limitations.

**Tenth Affirmative Defense**
(Laches)

The claims of Plaintiffs and putative class members, if any are barred by the doctrine of laches.

**Eleventh Affirmative Defense**
(No Interception: ECPA)

Defendant Paxfire is not liable for any violations of the Electronic Communications Privacy Act, because all electronic communications received or processed in any manner by Paxfire were provided to Paxfire by Defendant RCN Corporation ("RCN") and other Internet

Service Providers ("ISPs"), each of which had lawful possession and control of such communications and were lawfully authorized to provide such communications to Paxfire.

### Twelfth Affirmative Defense
(No Vicarious Liability)

Defendant Paxfire is not liable for any violations of the Electronic Communications Privacy Act, conversion, unjust enrichment, or any violations of the New York General Business Law engaged in or done by Defendant RCN Corporation ("RCN") and other Internet Service Providers ("ISPs").

### Thirteenth Affirmative Defense
(Good Faith)

Defendant Paxfire is not liable for any violations of the Electronic Communications Privacy Act, conversion, unjust enrichment, or any violations of the New York General Business Law because at all times it acted in good faith, in that all electronic communications received or processed in any manner by Paxfire were provided to Paxfire by Defendant RCN Corporation ("RCN") and other Internet Service Providers ("ISPs"), under conditions and circumstances where Paxfire believed that RCN and such other ISPs were each properly and lawfully providing such communications to Paxfire.

### Fourteenth Affirmative Defense
(Failure to State a Claim)

Plaintiff and putative class members, if any, fail to State a Claim for Relief because they fail to state that any identifiable electronic communication was intercepted by Paxfire, and that any identifiable personal information was collected or sold by Paxfire.

### Fifteenth Affirmative Defense
(Lack of Standing)

Plaintiff and putative class members, if any, lack standing to bring any claims against Paxfire because they failed to suffer any damages from Paxfire's conduct.

### Sixteenth Affirmative Defense
(Lack of Privity)

Plaintiff and putative class members, if any, are not entitled to any relief on any claim inasmuch as there was no business relationship, contractual or otherwise, between Plaintiff and any class member and Paxfire.

### Seventeenth Affirmative Defense
(General Denial)

Paxfire denies generally Plaintiff's allegations and denies that Plaintiff and putative class members, if any, are entitled to any relief on their claims.

## COUNTERCLAIMS

Paxfire brings counterclaims against Betsy Feist under New York law, and states as follows:

### PARTIES

1.      Counterclaim Plaintiff Paxfire, Inc. ("Paxfire") is a Delaware corporation with its principal place of business located in Sterling, in the Commonwealth of Virginia.  Paxfire's primary business is the provision of technology, that is, services based upon hardware and software devices, to Internet Service Providers ("ISPs").  Paxfire has no place of business in the State of New York.

2.      Upon information and belief, Counterclaim Defendant Betsy Feist ("Feist") is a resident of New York State, in the Southern District of New York.

3.      Counterclaim Defendant Feist has never been a customer or otherwise had a direct business relationship with Paxfire.

### JURISDICTION AND VENUE

4.      This Court has jurisdiction over the issues in these counterclaims pursuant to 28 U.S.C. § 1332(1), as the parties are citizens of different states and the amount in controversy is in excess of seventy-five thousand dollars ($75,000); and pursuant to 28 U.S.C. § 1367, as the counterclaims here alleged are so related to the original claims brought by the Plaintiff in her Class Action Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

5.      This Court has personal jurisdiction over Counterclaim Defendant Feist as she resides in this District and has brought the original action as alleged in her Class Action Complaint in this District

6.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391, as the Counterclaim Defendant Feist, who is the only counterclaim defendant named herein, resides in this District.

## PAXFIRE'S BUSINESS

### A. Paxfire's Business Arrangements

7.     At all times pertinent to these counterclaims, Paxfire was involved in the business of generating advertising revenues from address bar error traffic generated by End Users who were customers of those Internet Service Providers which had contracted with Paxfire to provide such services ("Error Traffic services") for their customers.

8.     Beginning in 2010, Paxfire also provided direct navigation to the websites of certain trademark holders for End Users who entered trademarks into address bars and search boxes embedded in their web browsers, where such End Users were customers of Internet Service Providers which had contracted with Paxfire to provide such services ("Direct Navigation services") for their customers.

9.     At all times pertinent Paxfire, through and with the ISPs with which Paxfire contracted, notified the End Users who were customers of such ISPs that the above described Error Traffic and Direct Navigation services were being provided, and allowed such End Users to opt-out of such services.

10.     At all times pertinent to these counterclaims, when such Error Traffic and Direct Navigation Services were provided through Paxfire to an End User, the resulting web page presented to the End User was clear in format and substance as being: (a) for Error Traffic, a page resulting from an error entered into the address bar, suggesting sites and url links that the End User might choose to visit; and (b) for Direct Navigation, a page belonging to the holder of

16

the trademark entered by the End User in his or her address bar or search box embedded in the End User's web browser.

11.     At all times pertinent to these counterclaims, those ISPs that contracted with Paxfire incorporated Paxfire's Error Traffic services, Paxfire's Direct Navigation services, or both into their networks as part of the ordinary course of their businesses; and provided such services to their End Users in the ordinary course of their businesses.

12.     At no time did Paxfire's Error Traffic and Direct Navigation services violate any federal or state law in the manner or means by which Paxfire provided such services.

13.     At all times pertinent to these counterclaims, Paxfire held contracts, and had ongoing business relationships, to provide Error Traffic services or Direct Navigation services, or both, with the following ISPs: RCN Corporation, Cavalier, Cincinnati Bell, Cogent Communications, Frontier Communications, Insight Broadband, Iowa Telecom, DirectPC (Hughes Network), XO Communications, and Wide Open West; and these contracts and business relationships had economic value for Paxfire.

14.     At all times pertinent to these counterclaims, Paxfire held agreements, and had ongoing business relationships, with trademark holders to provide Direct Navigation services; and these agreements and business relationships had economic value for Paxfire.

15.     At all times pertinent to these counterclaims, Paxfire held agreements, and had ongoing business relationships, with trademark aggregators holders to provide Direct Navigation services; and these agreements and business relations had economic value for Paxfire.

**B. Paxfire's Privacy Policies**

16.    At no time did Paxfire identify the person who was an End User and engaged in searches using the Internet.

17.    At no time did Paxfire collect or compile information about End Users of ISPs in any manner that constituted profiling of such End Users, or of the searches of such End Users.

18.    At no time did Paxfire share information about End Users of ISPs, or of their searches, with third parties.

19.    At no time did Paxfire sell information about End Users of ISPs, or of their searches.

20.    At no time did Paxfire allow third parties to access information about End Users of ISPs.

21.    At no time did Paxfire allow third parties to access searches by End Users of ISPs.

22.    At no time did Paxfire allow third parties to monitor searches by End Users of ISPs.

23.    At no time did Paxfire allow third parties to intercept searches by End Users of ISPs.

24.    At not time did Paxfire disclose confidential or private information relating to the use of the Internet by End Users of ISPs.

25.    At no time did Paxfire convert personal information of End Users of ISPs, including search histories, by providing such to third parties.

26.    At no time did Paxfire receive or retain money from third parties as a result of sharing and/or allowing access to the personal information of End Users of ISPs.

27.    At all time pertinent to this Complaint, Paxfire protected any and all information concerning any End Users of ISPs who might be using its services.

**COUNTERCLAIM DEFENDANT FEIST'S**

## KNOWLEDGE AND IMPROPER MOTIVES

### A. Knowledge & Lack Thereof of Betsy

28.     At all times pertinent to these Counterclaims, Counterclaim Defendant Feist knew or had reason to know that Paxfire held contracts, or had ongoing business relationships, for Error Traffic services, Direct Navigation services, or both, with the following ISPs: RCN Corporation, Cavalier, Cincinnati Bell, Cogent Communications, Frontier Communications, Insight Broadband, Iowa Telecom, DirectPC (Hughes Network), XO Communications, and Wide Open West; and knew or had reason to know that these contracts and business relationships had economic value for Paxfire.

29.     At no time did Counterclaim Defendant Feist have any information about the privacy practices of Paxfire regarding the use or protection of the search histories and practices of End Users of ISPs.

30.     At no time did Counterclaim Defendant Feist make any effort to inquire of Paxfire about its aforesaid privacy practices.

### B. Motive and Actions

31.      At all times pertinent to these Counterclaims, Counterclaim Defendant Feist opposed Paxfire's business practices of providing Error Traffic and Direct Navigation services.

32.     At no time did Counterclaim Defendant Feist contact Paxfire to inform Paxfire of her opposition to these business practices of Paxfire; and at no time did Feist opt out of such services.

33.     At all times pertinent to this Complaint, Counterclaim Defendant Feist sought to put an end to these Paxfire's business practices.

19

34.     On August 4, 2011, Counterclaim Defendant Feist filed the instant Complaint in this case, falsely stating that, directly or indirectly (by enabling one or more of the ISPs to which it provided its services to do the same):

a)  Paxfire identified persons who were End Users and engaged in searches using the Internet;

b)  Paxfire collected and compiled information about End Users of ISPs in a manner that constituted profiling of such End Users, or of the searches of such End Users;

c)  Paxfire shared information about End Users of ISPs, or of their searches, with third parties;

d)  Paxfire sold information about End Users of ISPs, or of their searches;

e)  Paxfire allowed third parties to access information about End Users of ISPs;

f)  Paxfire allowed third parties to access searches by End Users of ISPs;

g)  Paxfire allowed third parties to monitor searches by End Users of ISPs;

h)  Paxfire allowed third parties to intercept searches by End Users of ISPs;

i)  Paxfire disclosed confidential or private information relating to the use of the Internet by End Users of ISPs;

j)  Paxfire converted personal information of End Users of ISPs, including search histories, by providing such to third parties; and

k)  Paxfire received or retained money from third parties as a result of sharing and/or allowing access to the personal information of End Users of ISPs.

35.     At the time that Counterclaim Defendant Feist filed her Class Action Complaint, she knew that the aforesaid allegations were false and pejorative, and that she had insufficient basis to make such allegations.

36.     On or prior to August 4, 2011, and prior to filing her Class Action Complaint, Counterclaim Defendant Feist directly or through her agents and attorneys, communicated with media outlets such as the New Scientist and the Electronic Frontier Foundation, and informed them, falsely, of the following, and that she was about to file her Class Action Compliant alleging the following, all for the purpose of having them publish such allegations:

a)  Paxfire identified persons who were End Users and engaged in searches using the Internet;

i)  Paxfire collected and compiled information about End Users of ISPs in a manner that constituted profiling of such End Users, or of the searches of such End Users;

j)  Paxfire shared information about End Users of ISPs, or of their searches, with third parties;

k)  Paxfire sold information about End Users of ISPs, or of their searches;

l)  Paxfire allowed third parties to access information about End Users of ISPs;

m)  Paxfire allowed third parties to access searches by End Users of ISPs;

n)  Paxfire allowed third parties to monitor searches by End Users of ISPs;

o)  Paxfire allowed third parties to intercept searches by End Users of ISPs;

i)  Paxfire disclosed confidential or private information relating to the use of the Internet by End Users of ISPs;

j)  Paxfire converted personal information of End Users of ISPs, including search histories, by providing such to third parties;

k)  Paxfire received or retained money from third parties as a result of sharing and/or allowing access to the personal information of End Users of ISPs.

37.     At the time that Counterclaim Defendant Feist communicated these media outlets, including the New Scientist and the Electronic Frontier Foundation, she knew that the aforesaid allegations were false and pejorative, and that she had insufficient basis to make such allegations.

38.     Beginning on August 4, 2011, and continuing until the filing of these Counterclaims, the aforesaid media outlets with which Counterclaim Defendant Feist and her agents and attorneys directly communicated, and additional media outlets that reported on Counterclaim Defendant Feist's Class Action Complaint, each published one or more of the above false and pejorative statements, resulting in damage to Paxfire's business relationships and reputation.

39.     The improper motive of Counterclaim Defendant Feist in the filing of the her Class Action Complaint and in communicating with the above described media outlets was to generate publicity of her false, pejorative, and unfounded allegations, all for the purpose of interfering with, obstructing, and destroying Paxfire's contracts, agreements, and ongoing business relationships with the aforesaid ISPs, trademark holders, and advertising aggregators; destroying Paxfire's business; and thereby compelling Paxfire to stop and shut down its Error Traffic and Direct Navigation Services.

**COUNT ONE**
**(Tortious Interference with Contracts: ISPs)**

40.     Counterclaim Plaintiff Paxfire realleges and reincorporates by reference the allegations contained in paragraphs one through thirty-eight of these counterclaims and further alleges:

41.     At all times pertinent to these counterclaims, Paxfire had a valid contract with each of the following ISPs: RCN Corporation, Cavalier, Cincinnati Bell, Cogent

Communications, Frontier Communications, Insight Broadband, Iowa Telecom, DirectPC

(Hughes Network), XO Communications, and Wide Open West.

42.     At all times pertinent to these counterclaims, Counterclaim Defendant Feist knew

and had reason to know that Paxfire had a valid contract with each of the aforesaid ISPs.

43.     Counterclaim Defendant Feist procured a breach of Paxfire's contract with XO

Communications.

44.     Counterclaim Defendant Feist's procured this breach intentionally and without

justification.

45.     As a result of this breach, Paxfire suffered actual damages.


## COUNT TWO
### (Tortious Interference with Business Relationships: ISPs)

46.     Counterclaim Plaintiff Paxfire realleges and reincorporates by reference the

allegations contained in paragraphs one through thirty-eight of these counterclaims and further

alleges:

47.     At all times pertinent to these counterclaims, Paxfire had an ongoing business

relationship with each of the following ISPs: RCN Corporation, Cavalier, Cincinnati Bell,

Cogent Communications, Frontier Communications, Insight Broadband, Iowa Telecom,

DirectPC (Hughes Network), XO Communications, and Wide Open West.

48.     At all times pertinent to these counterclaims, Counterclaim Defendant Feist knew

and had reason to know that Paxfire had an ongoing business relationship with each of the

aforesaid ISPs.

49.     Counterclaim Defendant Feist interfered with Paxfire's ongoing business

relationships with each of these aforesaid ISPs; and did so through improper means: by

publicizing false, pejorative, and unfounded statements about Paxfire's privacy practices by means direct contact with media outlets and indirectly by the filing of her Class Action Complaint.

50.     Counterclaim Defendant Feist's interfered with these business relationships for an improper means, this being to stop Paxfire from providing, and to otherwise obstruct Paxfire from providing its Error Traffic and Direct Navigation services to ISPs and End Users; and through a dishonest means, this being the false, pejorative, and slanderous statements contained in the Counterclaim Defendant's Class Action Complaint and communications with the aforesaid media outlets as described above.

51.     As a result of this interference, Paxfire's business relationships with each of these ISPs were injured.

52.     As a result of such injury, Paxfire has suffered actual damages.

## COUNT THREE
### (Tortious Interference with Business Relationships: Trademark Holders)

53.     Counterclaim Plaintiff Paxfire realleges and reincorporates by reference the allegations contained in paragraphs one through thirty-eight of these counterclaims and further alleges:

54.     At all times pertinent to these counterclaims, Paxfire had an ongoing business relationship with trademark holders.

55.     At all times pertinent to these counterclaims, Counterclaim Defendant Feist knew and had reason to know that Paxfire had an ongoing business relationship with each of the aforesaid trademark holders.

56.     Counterclaim Defendant Feist interfered with Paxfire's ongoing business relationships with each of these aforesaid trademark holders; and did so through improper means: by publicizing false, pejorative, and unfounded statements about Paxfire's privacy practices by means direct contact with media outlets and indirectly by the filing of her Class Action Complaint.

57.     Counterclaim Defendant Feist interfered with these business relationships for an improper means, this being to stop Paxfire from providing, and to otherwise obstruct Paxfire from providing its Direct Navigation services to trademark holders and End Users; and through a dishonest means, this being the false, pejorative, and slanderous statements contained in the Counterclaim Defendant's Class Action Complaint and communications with the aforesaid media outlets as described above.

58.     As a result of this interference, Paxfire's business relations with each of these trademark holders were injured.

59.     As a result of such injury, Paxfire has suffered actual damages.


**COUNT FOUR**
**(Tortious Interference with Contracts: Advertising Aggregators)**

60.     Counterclaim Plaintiff Paxfire realleges and reincorporates by reference the allegations contained in paragraphs one through thirty-eight of these counterclaims and further alleges:

61.     At all times pertinent to these counterclaims, Paxfire had a valid contract and agreements with advertising aggregators, including LinkShare.

62.     At all times pertinent to these counterclaims, Counterclaim Defendant Feist knew and had reason to know that Paxfire had a valid agreement and contract with each of the aforesaid advertising aggregators.

63.     Counterclaim Defendant Feist procured a breach of Paxfire's contract with an advertising aggregator, this being LinkShare.

64.     Counterclaim Defendant Feist procured these breaches intentionally and without justification.

65.     As a result of these breaches, Paxfire suffered actual damages.


## COUNT FIVE
### (Tortious Interference with Business Relationships: Advertising Aggregators)

66.     Counterclaim Plaintiff Paxfire realleges and reincorporates by reference the allegations contained in paragraphs one through thirty-eight of these counterclaims and further alleges:

67.     At all times pertinent to these counterclaims, Paxfire had an ongoing business relationship with advertising aggregators, including LinkShare.

68.     At all times pertinent to these counterclaims, Counterclaim Defendant Feist knew and had reason to know that Paxfire had an ongoing business relationship with each of the aforesaid advertising aggregators.

69.     Counterclaim Defendant Feist interfered with Paxfire's ongoing business relationships with each of these aforesaid advertising aggregators; and did so through improper means: by publicizing false, pejorative, and unfounded statements about Paxfire's privacy practices by means direct contact with media outlets and indirectly by the filing of her Class Action Complaint.

70.     Counterclaim Defendant Feist interfered with these business relationships for an improper means, this being to stop Paxfire from providing, and to otherwise obstruct Paxfire from providing its Direct Navigation services to trademark holders represented by these advertising aggregators; and through a dishonest means, this being the false, pejorative, and slanderous statements contained in the Counterclaim Defendant's Class Action Complaint and communications with the aforesaid media outlets as described above.

71.     As a result of this interference, Paxfire's business relations with each of these advertising aggregators were injured.

77.     As a result of such injury, Paxfire has suffered actual damages.


**COUNT SIX**
**(Defamation: Slander)**

78.     Counterclaim Plaintiff Paxfire realleges and reincorporates by reference the allegations contained in paragraphs one through seventy-seven of these counterclaims and further alleges:

79.     Counterclaim Defendant Feist, directly or through her agents and attorneys, slandered Paxfire by verbally publishing the aforesaid false, pejorative and unfounded statements to the aforesaid media outlets on or about the dates specified.

80.     Counterclaim Defendant Feist was neither privileged nor authorized to publish such statements to such outlets.

81.     Counterclaim Defendant Feist acted with intent to publish such false, pejorative and unfounded statements; or acted with knowledge that she did not know the truth about such statements; or acted with negligence as to the truth of such statements.

82.     The statements of Counterclaim Defendant Feist damaged the reputation of Paxfire, which resulted in special harm, including the following:

(a) the termination of contracts and business relationships with ISPs, trademark holders, and advertisers;

(b) the refusal of ISPs, trademarks holders, and advertisers to do additional business with Paxfire, and other ISPs, trademark holders, and advertisers to do any business with Paxfire; and

(c) the significant reduction in the valuation of the Paxfire at a time that Paxfire was in active negotiations with other Internet companies for the purchase or merger of Paxfire by or with such companies; and the failure of such negotiations.

83.     The aforesaid defamatory statements of Counterclaim Defendant Feist comprised defamation per se, as they included allegations of criminal conduct under the Electronic Communications Privacy Act.

84.     As a result of such injury, Paxfire has suffered actual damages.


**COUNT SEVEN**
**(Defamation: Libel)**

85.     Counterclaim Plaintiff Paxfire realleges and reincorporates by reference the allegations contained in paragraphs one through eighty-three of these counterclaims and further alleges:

86.     Counterclaim Defendant Feist, directly or through her agents and attorneys, on or about the dates specified, libeled Paxfire by publishing the aforesaid false, pejorative, and unfounded statements by means of the filing of her Class Action Complaint, and causing the aforesaid media outlets to further publish, in writing, the same false, pejorative, and unfounded statements.

87.     Counterclaim Defendant Feist was neither privileged nor authorized to publish such statements.

88.     Counterclaim Defendant Feist acted with intent to publish such false, pejorative and unfounded statements; or acted with knowledge that she did not know the truth about such statements; or acted with negligence as to the truth of such statements.

89.     The statements of Counterclaim Defendant Feist damaged the reputation of Paxfire, which resulted in special harm, as specified above.

90.     The aforesaid defamatory statements of Counterclaim Defendant Feist comprised defamation per se, as they included allegations of criminal conduct under the Electronic Communications Privacy Act.

91.     As a result of such injury, Paxfire has suffered actual damages.

**REQUEST FOR RELIEF**

Defendant Paxfire asks for judgment in its favor as follows:

1.     Plaintiff's Class Action Complaint be dismissed with prejudice and Judgment be entered in favor of Defendant Paxfire;

2.     No class is certified, but in the event that a class is certified, that Judgment on Plaintiff's Class Action Complaint be entered against Plaintiff and putative class members and in favor of Defendant Paxfire;

3.     Judgment be entered against Plaintiff and in favor of Defendant Paxfire on Paxfire's Counterclaims, in the amount of thirty million dollars ($30,000,000) for compensatory and special damages and fifty million dollars ($50,000,000) in punitive damages;

4.     Defendant Paxfire be awarded attorneys' fees costs, and expenses; and

5.     Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Defendant Paxfire requests trial by jury of all claims that may be tried in the United

States District Court for the Southern District of New York.


Respectfully Submitted,

/s/Andrew Grosso

Andrew Grosso, Esq.
ANDREW GROSSO & ASSOCIATES
GEORGETOWN PLACE
1101 THIRTIETH STREET, NW, SUITE 300
WASHINGTON, D.C.  20007
(202) 298-6500 Tel.
(202) 298-5599 Fax
Agrosso@acm.org Email