**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BETSY FEIST,** individually, and on behalf of all others similarly situated, | )<br>)<br>) Case No. 11-cv-5436 (JGK) |
| Plaintiff, | )<br>)<br>) |
| vs. | )<br>)<br>) |
| **RCN CORPORATION** and **PAXFIRE, INC.,** | )<br>)<br>) |
| Defendants. | )<br>) |

**MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AGAINST PAXFIRE AND ITS COUNSEL FOR FILING FRIVOLOUS, UNSUPPORTED COUNTERCLAIMS FOR AN IMPROPER PURPOSE**

**I.      SAFE HARBOR COMPLIANCE[1]**

In accordance with Federal Rule of Civil Procedure ("Rule") 11(c)(2), Ms. Feist served Paxfire's counsel, Andrew Grosso, with the Motion for Sanctions Against Paxfire and its Counsel, and its accompanying memorandum, declaration, and exhibits ("Motion"), by email and overnight UPS, both sent on October 10, 2011. *See* Declaration of Peter E. Seidman in Support of Plaintiff's Safe Harbor Compliance ("Safe Harbor Decl."), Ex. A. Under Rule 11(c)(2)'s "safe harbor" provision, a Rule 11 motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately

---

[1] Aside from the addition of the "Safe Harbor Compliance" section and its accompanying declaration, this brief remains unchanged from the version sent to Paxfire's counsel, as Rule 11(c)(2) requires that the motion be served on the opposing party at least 21 days before it is filed with the court. Should the Court desire any additional information, Ms. Feist's counsel is prepared to provide additional briefing on the deficiencies that remain in the proposed amended counterclaims and/or an allegation-by-allegation explanation as to why Paxfire's counterclaims lack a reasonable factual and/or legal basis.

corrected within 21 days of service or within another time the court sets." Plaintiff is filing this Motion because Paxfire has not withdrawn or appropriately corrected its Answer, Affirmative Defenses, and Counterclaims ("Counterclaims") despite the passage of more than two months since being served with Plaintiff's draft Motion.

On October 31, 2011, 21 days after receiving the draft Motion, Paxfire's counsel sent Ms. Feist's counsel a letter that concluded, in part, with a representation that Paxfire would be amending its counterclaims, and stating that Paxfire would seek leave to amend "no later than Friday, November 11, 2011." Safe Harbor Decl., Ex. B.

On November 8, 2011, Ms. Feist's counsel sent Mr. Grosso a letter stating that Ms. Feist would "delay filing our sanctions motion until November 11, 2011 in reliance on your representation that you anticipate seeking leave to amend your complaint no later than that date." Safe Harbor Decl., Ex. C.

On November 14, 2011, Ms. Feist's counsel sent an email to Paxfire's counsel inquiring whether Paxfire still planned to amend its counterclaims; Paxfire's counsel stated that he was drafting the counterclaims and stated that counsel should "expect it on Wednesday [November 17, 2011]." Safe Harbor Decl., Ex. D.

On November 16, 2011, Paxfire's counsel sent an email stating that he was "going through a final review of the amended counterclaims" and that he would email "a draft before filing and give you a day or so to consider whether you wish to object to its filing." Safe Harbor Decl., Ex. E.

On November 17, 2011, Paxfire's counsel sent a draft proposed amended answer, affirmative defenses, and counterclaims. Safe Harbor Decl., Ex. F. That same day, Ms. Feist's counsel requested a redlined version; Paxfire's counsel never responded to that request. *Id.*

On November 23, 2011, Paxfire's counsel sent an email stating that Paxfire would "be seeking leave to file this Amended Complaint on Friday [November 25, 2011,]" and asked counsel whether there were any objections. Safe Harbor Decl., Ex. G. Paxfire misspelled the email address of the only addressee on the Plaintiff's side (typing "milber.org" instead of "milberg.com"), but counsel for Defendant RCN forwarded the message to Ms. Feist's counsel, noting that nothing was attached to the original email. *Id.*

On November 28, 2011, Paxfire's counsel sent a draft of its amended answer, defenses, and counterclaims and inquired whether counsel for any of the parties had any objections. Safe Harbor Decl., Ex. H. Counsel for Ms. Feist responded, in substantive part, that:

> We object. The proposed amendment does nothing to cure the deficiencies identified in our motion to dismiss counterclaims and Rule 11 letter and motion. Instead, it multiplies the proceedings in this case unreasonably and vexatiously.

*Id.* That day, Paxfire filed Defendant Paxfire, Inc.'s Motion for Leave to Amend Answer, Affirmative Defenses, and Counterclaims and attached the proposed amended document as an exhibit.

Paxfire failed to withdraw or appropriately correct the challenged paper, claims, or contentions within 21 days after service of the motion, i.e., by November 3, 2011, necessitating the filing of the instant Motion for Sanctions.

Paxfire's belated motion for leave to amend its counterclaims does not cure the deficiencies addressed in this Motion, nor will its proposed amended counterclaims. The proposed amended counterclaims still allege, without a reasonable legal or factual basis, that Ms. Feist tortiously interfered with Paxfire's contracts and business relationships with Internet service providers (Counts I and II), slandered Paxfire by making statements to the *New Scientist* regarding the filing of her complaint (Count VI), and "libeled Paxfire by publishing on the EFF ["Electronic Frontier Foundation"] website and blog, in the instant Class Action Complaint, and

to the New Scientist by email, and accusing the New Scientist to publish an article on the Internet. . ." (Count VII).

Paxfire still claims damages in excess of $80 million, despite withdrawing claims regarding tortious interference with Trademark Holders and Advertising Aggregators, and acknowledging that, in purported negotiations for the sale of Paxfire, Paxfire expected an offer of "at least $10 million plus additional monetary considerations"—far less than the $80 million Paxfire claims.

Paxfire withdrew three tortious interference claims (Counts III, IV, and V), but reasserted others. Instead of alleging that Ms. Feist urged media outlets to publish her allegations, as in the initial counterclaims, Paxfire attempted to manipulate the exhibits provided with Ms. Feist's Motion to concoct a basis for its allegations. With the draft Motion, Ms. Feist provided an email (attached hereto) evidencing that the relationships between Ms. Feist and the alleged "media outlets" were innocuous and making clear that the EFF and the *New Scientist* conducted independent research and analysis for their articles.  The email also demonstrated the late hour (relative to the filing of the complaint and publication of the news article) at which Ms. Feist was introduced to one of the alleged media outlets. Paxfire distorts this email, taking an offhand phrase out of context, in attempting to allege that Ms. Feist acted in concert with the media outlets, acting as some malicious "legal front" to advance EFF's and the International Computer Science Institute's "concern[s] about, both, [sic] the privacy and network neutrality implications of Paxfire's practices," and to advance their "goals of: damaging and destroying Paxfire and its business model . . . ." Proposed Amended Counterclaims ¶¶ 36-38. But the fundamental allegations are the same: that Ms. Feist engaged in some conspiracy with media outlets to take down Paxfire. Paxfire has no basis for such claims, nor for any inference that Ms. Feist acted

maliciously rather than acting independently to protect her legal rights to privacy. Ms. Feist's only communications with the media outlets and ICSI were in researching the basis for her claims, and Paxfire has been provided evidence that demonstrates that fact.

For these reasons, those discussed further herein, and those addressed in Ms. Feist's previously-filed Motion to Dismiss Paxfire's Counterclaims and reply in further support, sanctions are appropriate here, and are necessary to prevent further attempts to waste resources, delay the litigation, and intimidate Ms. Feist.

## II.    BACKGROUND

On August 4, 2011, Betsy Feist, an individual subscriber to RCN Corporation's Internet service, filed a complaint against RCN and Paxfire, Inc. Dkt. No. 1 ("Complaint" or "Cpl.). The Complaint alleged, in sum, that RCN utilized Paxfire's technology to intercept and in some cases "monetize" plaintiffs' Internet searches by redirecting them to websites in exchange for a fee. With regard to Paxfire, the Complaint alleges violations of the Wiretap Act, Conversion, and Unjust Enrichment. Cpl. Counts I, IV, and V. Ms. Feist's Complaint made her allegations "upon personal knowledge as to her own acts, and upon information and belief based on the investigation conducted by Plaintiff's counsel, including consultation with technology experts," Cpl. 1, who were identified as "researchers affiliated with the International Computer Science Institute (ICSI) and the University of California, Berkeley," Cpl. ¶ 5.

On August 31, 2011, Paxfire answered the Complaint and counterclaimed against Ms. Feist, alleging tortious interference with Paxfire's contracts and business relationships, libel, and slander, and seeking $80 million in compensatory, special, and punitive damages. Dkt. No. 8 ("Counterclaims" or "CC"). Paxfire alleges that Ms. Feist tortiously interfered with and defamed Paxfire by filing her Complaint and speaking with "media outlets" regarding the Complaint's allegations. CC ¶ 36. In its Counterclaims, Paxfire identifies Electronic Frontier Foundation

("EFF") and *New Scientist* as the "media outlets" with whom Ms. Feist purportedly "communicated"—"all for the purpose of having them publish such allegations," to "generate publicity," and for the purpose of "interfering with, obstructing, and destroying" Paxfire's business. CC ¶¶ 36, 39.

These claims are deficient for the reasons set forth in Ms. Feist's Motion to Dismiss Paxfire's Counterclaims ("MTD"), incorporated herein by reference. *See* Ex. A.[2] In further support of this motion for sanctions, Ms. Feist attaches the declaration of Peter D. Eckersley, EFF's Technology Projects Director and one of the authors of EFF's blog post regarding Paxfire. Mr. Eckersley's declaration makes clear that EFF's post was not published at Ms. Feist's behest or based on information she communicated to EFF. Ms. Feist also attaches a chain of email communications with Jim Giles, author of the *New Scientist* article regarding Paxfire. *See* Ex. B. The Giles email chain demonstrates that Mr. Giles was introduced to and reached out to Ms. Feist's counsel less than 72 hours before his article was published and the Complaint was filed. Mr. Giles's email also makes it clear that his article was not published at Ms. Feist's behest or based on information she communicated to Mr. Giles but rather, that the *New Scientist* published the article only after Mr. Giles had "been investigating Paxfire's search redirections for quite some time now and [being] fully up to date on [ICSI's] findings," *see id.*

Paxfire's Counterclaims are without legal or factual merit, they were filed without a reasonable basis, and, moreover, they are part of a course of conduct designed to harass Ms. Feist and needlessly increase the cost of the litigation. Accordingly, the Counterclaims were filed in violation of Federal Rules of Civil Procedure 11(b)(1), (2), and (3) ("Rule 11") and sanctions are warranted, *see* Rule 11(c).

---

[2] Unless otherwise specified, all exhibits ("Ex.") are attached to the Declaration of Peter E. Seidman filed concurrently with this motion.

## III.    STANDARD ON A MOTION FOR SANCTIONS

"A pleading, motion or other paper violates Rule 11 . . . 'where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.'" *Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 391 (S.D.N.Y. 2007) (Scheindlin, J.) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)). Rule 11(b) provides, in relevant part, that an attorney presenting a pleading to a court must "certif[y] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . ."

"Rule 11 sanctions are judged under an objective reasonableness standard and are appropriate when it is patently clear that a pleading had no chance of success." *Gold v. The Last Experience*, 97 CIV. 1459 (JGK), 1999 WL 156005, at *3 (S.D.N.Y. Mar. 22, 1999) (Koeltl, J.) (citations omitted); *See also Abdelhamid*, 515 F. Supp. 2d at 392. Courts may impose sanctions even "where the conduct at issue is not covered by one of the other sanctioning provisions," and "may resort to its 'inherent power to fashion sanctions, even in situations similar or identical to those contemplated by [a] statute or rule.'" *Royal Indian Raj Intern. v. Domains by Proxy, Inc.*, No. 08 Civ. 3445, 2011 WL 2946367, at *3 (S.D.N.Y. July 20, 2011) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991) and *DLC Mgmt. Corp. v.. Town of Hyde Park*, 163 F.3d

124, 136 (2d Cir. 1998)). "Sanctions shall be imposed against an attorney, his client, or both" when it appears that a pleading violates Rule 11. *Greene v. Donovan*, No. 07 Civ. 1928, 2007 WL 2005558, at *2 (S.D.N.Y. July 10, 2007) (citing *Eastway Constr. Corp. v. New York,* 762 F.2d 243, 254 (2d Cir. 1985)).

## IV.   ARGUMENT

### A.   Paxfire's Counterclaims Were Filed to Harass, Cause Unnecessary Delay, and Needlessly Increase the Cost of Litigation

Paxfire counterclaimed for $80 million against an individual plaintiff with a legitimate basis for filing a complaint. The Counterclaims were based on allegations that are patently unfounded and which stem from unspecified statements made in the course of litigation that are protected by several privileges. The amount of damages sought and the complete absence of factual or legal merit demonstrate that these allegations were designed to harass and intimidate Ms. Feist, delay the litigation, and add to its cost.

Moreover, the Counterclaims are part of a course of conduct that is designed for *in terrorem* effect. On August 8, 2011, Paxfire issued a press release in which it stated that it "intend[ed] to seek the full sanctions available to it under the law." *See* Ex. C. It also sent the press release to media outlets with an introduction that stated, "You recently wrote or published an article about our company, Paxfire, Inc., referencing a lawsuit that makes allegations about Paxfire." *See* Ex. D. Paxfire sent the letter, with this assertion, to media outlets that had not in fact "recently wrote or published an article" about Paxfire. *See* Ex. E.

Paxfire then filed its counterclaims against Ms. Feist on August 31, 2011. On the business day before Ms. Feist's motion to dismiss or answer was due (September 23, 2011), Ms. Feist's counsel received a letter from Paxfire's counsel threatening sanctions for the filing of

Plaintiff's Complaint. Ex. F (sanctions letter). That letter, too, was baseless, and it mischaracterized a number of Ms. Feist's allegations.

Paxfire and its counsel should be sanctioned for filing frivolous Counterclaims to delay the litigation and to harass Ms. Feist, who filed a thoroughly-researched, well-founded Complaint. *See Fox v. Boucher*, 794 F.2d 34, 37-38 (2d Cir. 1986) (affirming sanctions against appellant because his "complaint was entirely frivolous, and the record shows that it was made as part of a conscious effort to harass. . . . Courts look with disfavor on this sort of unfounded spite action").

> **B.    Paxfire's Counterclaims Lack a Reasonable Basis and Discovery Will Not Provide Evidentiary Support**
>
> > **1.    The Articles Published by the Media Outlets with Whom Ms. Feist Allegedly Communicated Show That They Were Not Published at Ms. Feist's Behest**

Paxfire's counterclaims allege that Ms. Feist defamed Paxfire and tortiously interfered with its business relationships and contracts by communicating with "media outlets" to publish her allegations in order to generate publicity and destroy Paxfire's business. Had Paxfire and its counsel made a "reasonable inquiry"—simply by reading the first few paragraphs of the articles published by the media outlets to which Ms. Feist purportedly made defamatory and tortious statements—it would have known at the outset that its own allegations were false because neither article was based on anything Ms. Feist or her "agents" wrote or said. The EFF article states, in its byline, that EFF performed its own "technical analysis." *See* Ex. A. to MTD. The article also cited "two research papers" on DNS redirection to third-party proxies published earlier in 2011, and referenced "parallel investigations by [ICSI] and EFF" that revealed Paxfire as the main actor behind the search redirection. Ex. A at 3; *see also* Ex. A to MTD. The *New Scientist* article cited "U.S. Patents"—not Ms. Feist—as "suggest[ing] that [Paxfire] may be part of a larger plan

to allow ISPs to generate revenue by tracking the sites their customers visit" and referred to "evidence collected by ICSI." Ex. A at 4; *see also* Ex. B to MTD.

Thus, Paxfire and its attorney falsely certified that they had made reasonable inquiry with respect to its allegations that Ms. Feist "communicated" with EFF and the *New Scientist* "all for the purpose of having them publish such allegations," to "generate publicity," and for the purpose of "interfering with, obstructing, and destroying" Paxfire's business. CC ¶¶ 36-39. In fact, Paxfire and its counsel leveled allegations in the face of overwhelming evidence that they were false.

### 2.    Paxfire's Counterclaims Will Have No Evidentiary Support after Discovery

Paxfire and its counsel had no reason to believe that they would discover evidence to support their unfounded allegations that Ms. Feist prompted the *New Scientist* and EFF articles and indeed, there is no such evidence. Peter Eckersley has provided a declaration stating that EFF did not rely on Ms. Feist or her Complaint in drafting its blog post, but rather, that it learned of the search redirection from ICSI and from "parallel findings by a group at Microsoft Research and the Polytechnic Institute of NYU." Mr. Eckersley also states that EFF "would certainly have published a blog post about [Paxfire's troubling business practices] even if no litigation had ensued"; and "Ms. Feist's agents and attorneys learned about these research results from EFF and the researchers, not the other way round." Eckersley Decl.

Mr. Giles has followed and reported on the Netalyzr (the tool developed by ICSI that uncovered the search redirection) since May 2010, more than a year before Ms. Feist was involved in this litigation and more than a year before Mr. Giles spoke with her counsel. Ex. A. at 4; Ex. C to MTD. In addition, Plaintiff has attached an August 1, 2011, email chain in which an ICSI researcher "introduce[s]" Jim Giles to Ms. Feist's counsel, noting that "Jim has been

investigating Paxfire's search redirections for **quite some time now and is fully up to date on [ICSI's] findings**, so it seems helpful for all of you to have each other's contact information." Ex. B (emphasis added). Mr. Giles then reached out to Plaintiff's counsel—not the other way around. *Id.*

For these reasons, Paxfire cannot avoid sanctions by claiming that additional discovery will yield evidence showing that its allegations were true; there is no such evidence.

### C.   Paxfire's Counterclaims Are Not Warranted by Existing Law and Are Frivolous

Ms. Feist's motion to dismiss addresses in detail the complete lack of legal support for Paxfire's counterclaims, *see* Ex. A; in sum: Paxfire's defamation and tortious interference claims lack any basis whatsoever because it is well established that the purported statements about which Paxfire complains are protected by the Noerr-Pennington Doctrine, Ex. A at 8, and the absolute privilege that applies to statements made in the course of a litigation, Ex. A. at 16-20. The defamation claims also are protected by privileges that apply to issues of legitimate public concern, self-interest, or common interest. Ex. A at nn. 9, 10. Paxfire's claims are also legally deficient because they fail to adequately allege the content, manner, date(s), publishers, or recipients of the statements, Ex. A at 20-24; malice, Ex. A at 13-14; damages, Ex. A at 14-15, 23-24; or causation, Ex. A at *id*; and fail to meet the pleading standards for pleadings in general, Ex. A. at 6.

There is no existing law, and no "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," that would or should allow plaintiffs to be sued for tortious interference or defamation for filing complaints without any malice and with full intent to pursue the litigation, or for communicating about the litigation.

## V.    CONCLUSION

For the foregoing reasons, Ms. Feist respectfully requests that Paxfire and its attorney, Andrew Grosso, be sanctioned. *See* Rule 11(c)(4) (sanctions should "deter repetition of the conduct" and  "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."); *See also Boyce–Idlett v. Verizon Corporate Services Corp.*, No. 06 Civ. 975(DAB)(KNF), 2007 WL 3355497, at *2 (S.D.N.Y. Nov. 6, 2007) ("directives of a nonmonetary nature [include] striking the offending paper, issuing an admonition, reprimand, or censure, or, requiring participation in seminars or other educational programs. . . ."). Accordingly, Ms. Feist requests that the court order that:

- Paxfire and its counsel be ordered to pay attorneys' fees and costs associated with responding to the counterclaim and in making this motion, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 70 (1991) (affirming sanctions for bad faith conduct involving "frivolous pleadings" including "baseless affirmative defenses and counterclaims" and providing for attorneys' fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") (internal quotations and citations omitted).

- Paxfire's counterclaims be dismissed, *Kalwasinki v. Ryan*, No. 96-cv-6475, 2007 WL 2743434. at *2 (W.D.N.Y. Sept. 17, 2007) (the sanction of dismissal is warranted when, for example, a party's conduct is "due to willfulness, fault, or bad faith.") (quoting *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993); *see also U.S. v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993) (when a party "abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action").

Dated: December 15, 2011                    Respectfully Submitted,


                              _____/s/ Peter E. Seidman_____

                              **MILBERG LLP**
                              Sanford P. Dumain
                              Peter E. Seidman
                              Melissa Ryan Clark

Charles Slidders
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
E-mail: sdumain@milberg.com
        pseidman@milberg.com
        mclark@milberg.com
        cslidders@milberg.com

-and-

**REESE RICHMAN LLP**

Michael E. Reese
Kim Richman
875 Avenue of the Americas, 18th Floor
New York, NY 10001
Telephone: (212) 579-4625
Facsimile: (212) 253-4272
E-mail:mreese@reeserichman.com
        krichman@reeserichman.com

*Attorneys for Plaintiff and Counterclaim*
*Defendant Betsy Feist*

13