12VTFEIA

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
     BETSY FEIST, Individually, and
3    on behalf of all others
     similarly situated,
4
                    Plaintiff,
5
                 v.                        11 CV 5436 (JGK)
6
     RCN Corporation and PAXFIRE,
7    INC.,
8                    Defendants.
     ------------------------------x
9                                          New York, N.Y.
                                           January 31, 2012
10                                         5:00 p.m.

11   Before:

12                      HON. JOHN G. KOELTL,

13                                         District Judge

14                          APPEARANCES

15   MILBERG, LLP
          Attorneys for Plaintiff
16   BY:  SANFORD DUMAIN
          PETER SEIDMAN
17        MELISSA CLARK

18   REESE RICHMAN
          Attorneys for Plaintiff
19   BY:  KIM RICHMAN

20   BINGHAM McCUTCHEN
          Attorneys for Defendant RCN Corporation
21   BY:  PETER NEGER
          MATTHEW CARE
22
     ANDREW GROSSO & ASSOCIATES
23        Attorneys for Paxfire, Inc.
     BY:  ANDREW GROSSO
24

25
```

12VTFEIA

1              (In open court)

2              THE COURT:  All right.  Feist against RCN, parties

3      tell us who they are, please.

4              MR. DUMAIN:  Sanford Dumain, Peter Seidman and Melissa

5      Clark, from Milberg, LLP for the plaintiff.  And your Honor, I

6      would also like to bring to the Court's attention that the

7      plaintiff, Betsy Feist, is also in the courtroom this

8      afternoon.

9              MR. RICHMAN:  And Kim Richman from Reese Richman on

10     behalf of Ms. Feist.

11             THE COURT:  OK.

12             MR. NEGER:  Peter Neger from Bingham McCutchen on

13     behalf of RCM Telecom Services, and with me is my colleague,

14     Derek Care.

15             MR. GROSSO:  Andrew Grosso for Paxfire.

16             THE COURT:  All right.  I have a flurry of motions

17     before me.  There's plaintiff's motion to dismiss Paxfire's

18     counterclaims, Paxfire's motion to amend its counterclaims, and

19     there's a motion by the plaintiff for Rule 11 sanctions

20     directed to the original counterclaims.  This of course -- oh,

21     and then we have defendant Paxfire's motion to strike two

22     paragraphs in the complaint.  This follows up the motion by

23     defendant counterclaim Paxfire to extend time to file exhibits,

24     which I granted, and counterclaim plaintiff Paxfire's motion

25     for leave to consolidate its reply to opposition of

1    counterclaim defendant Betsy Feist to counterclaim Paxfire's

2    motion for leave to amend and its opposition to motion of

3    counterclaim plaintiff Betsy Feist for sanctions pursuant to

4    Rule 11, and I granted that motion.

5              I should point out really at the outset that the

6    flurry of motions in this case is really unnecessary, and the

7    level of vitriol that oozes through the motion papers is

8    unnecessary.  This is my first opportunity to talk to you all,

9    and I don't expect to see it again.  So when you do motion

10   papers before me, you can cut out the invective against each

11   other and just give me the motions.  I also expect the lawyers

12   to cooperate in the case before me.  A little cooperation would

13   have eliminated some of these motions and saved all parties a

14   lot of lawyer time as well as a lot of grief for yourselves.

15             You want to consolidate some things, a letter is

16   perfectly fine or a stipulation.  A motion?  It would be common

17   for parties to agree on such things as amendments and have

18   motions to dismiss directed against an amended complaint or

19   against an amended counterclaims.  But I have this set of

20   motion papers before me, and I also have a proposed scheduling

21   order, which you all submitted to me, and I am prepared to

22   listen to anything that the parties would like to tell me in

23   connection with the motions before I dispose of them from the

24   bench.

25             I have read the papers, plainly, so anything that the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    parties would like to tell me on the motions, you are welcome

2    to do that.  So these motions really are between the plaintiff

3    and Paxfire.  RCN has stayed above the fray, I believe.

4            So Mr. Dumain.

5            MR. DUMAIN:  Thank you, your Honor.

6            I will be brief, since your Honor has indicated that

7    you read the papers and are prepared to rule.  The only thing I

8    would like to point out to the Court in connection with the

9    motions that have been made is, your Honor, I have been

10   practicing for almost 30 years and I can represent to the Court

11   this is the first time I have made a motion under Rule 11.

12           I think this case --

13           THE COURT:  One too many.

14           MR. DUMAIN:  Your Honor, respectfully --

15           THE COURT:  Anything you say to me I accept is with

16   respect, until you give me cause to think that that's not true.

17           MR. DUMAIN:  Understood, your Honor.

18           As your Honor knows from reading the papers, the

19   reason for the motion actually is quite simple, Ms. Feist filed

20   a complaint seeking redress under a federal statute and various

21   state common law.  In response to that complaint, a

22   counterclaim was filed against her by Paxfire asserting,

23   without any basis at all, that she was somehow part of some

24   conspiracy to destroy Paxfire's business.

25           The submission that we made has demonstrated without

12VTFEIA

1    question that there was no basis for that, there was never any

2    basis for that, it was merely to intimidate the plaintiff to go

3    away.  And when a claim is filed with that kind of malice, we

4    believed the motion was warranted.  And it's as simple as that.

5    And when we see from the response to the motions -- the story

6    that Paxfire has is a moving target.  Initially, they claim

7    that Ms. Feist --

8         THE COURT:  Yes, but of course, you resisted their

9    motion to amend their counterclaims, and you made it clear that

10   your Rule 11 motion was directed to the original counterclaims.

11   You don't know what they're going to say in the amended

12   counterclaims, which whatever counterclaims they file might be

13   amended again, and rather than wait to see what the amended

14   counterclaims would finally be, if they are filed, you made it

15   quite plain that because they didn't withdraw their original

16   counterclaims, even though they sought leave to amend, that you

17   wanted Rule 11 sanctions for the counterclaims even though they

18   were being withdrawn.

19        MR. DUMAIN:  Your Honor, there's a mistake in your

20   Honor's understanding of what transpired.  When Paxfire moved

21   to amend its answer on the counterclaims, it attached, as it's

22   required to do by the federal rules --

23        THE COURT:  No, it attached proposed amended

24   counterclaims.  And when I grant them the opportunity to file

25   amended counterclaims, I will make it quite clear to them that

1    they have the opportunity to make sure that any amended

2    counterclaims that they file take into account that there are

3    challenges to any good faith basis to make such counterclaims,

4    and any such counterclaims had best be made with a sufficient

5    basis in fact and law, and if they have no such basis, they

6    shouldn't file them.  And you can file your Rule 11 cautionary

7    letter and 21-day notice to them when they file amended

8    counterclaims, if they file amended counterclaims.  Perhaps you

9    have sufficiently deterred them from filing such counterclaims.

10   But I'm under no misconception that your Rule 11 motion said

11   that it was directed at the original counterclaims.

12           MR. DUMAIN:  That is correct, your Honor.

13           The fact that we opposed the motion to amend the

14   counterclaim was based on the simple fact that we believed --

15   and the standard is the same as a 12(b)(6) motion would be --

16   we believed the counterclaim would be futile because it does

17   not state a claim.  I think the law is clear that that's a

18   proper and common reason to oppose to amend a counterclaim.

19           THE COURT:  The law is clear, though, that if I were

20   to grant a motion to dismiss right out of the box, a 12(b)(6)

21   motion to dismiss, that it normally should not be with

22   prejudice, it should be without prejudice.

23           So you say well, gee, their motion to amend what they

24   were attaching was itself insufficient.  Well, that leaves us

25   in the position that even if you are right that what they're

1    offering in their motion to amend is insufficient, I still

2    shouldn't dismiss their counterclaims with prejudice because

3    it's the first time and they should be given an opportunity to

4    amend.  They ought not be dismissed with prejudice when they

5    haven't been given an opportunity to amend.  You say well, this

6    particular amendment would be insufficient, but that doesn't

7    mean that they couldn't have a valid counterclaim which hasn't

8    yet been pleaded.

9         The courts frown on first round motions to dismiss

10   with prejudice.  And Paxfire argues that it's been effectively

11   destroyed.  You say:  But not because of what the plaintiff

12   did.  And they say that there's sufficient indications -- I

13   don't say it's correct at all -- that the plaintiff

14   participated in that.  And you say it's not right.

15        OK.  They should at least be given the opportunity to

16   determine whether they can plead counterclaims.  If they fail

17   to plead counterclaims and you make another motion to dismiss

18   the counterclaims, then that motion to dismiss will be granted

19   with prejudice because they have had every opportunity to

20   plead, and then it will be granted with prejudice.  But simply

21   multiplying the proceedings doesn't help.  Normally a motion to

22   dismiss is granted without prejudice because a party should at

23   least be given the opportunity to replead.

24        Go ahead.

25        MR. DUMAIN:  Your Honor, I understand everything your

1   Honor just said, and I agree with you as a general proposition

2   when motions to dismiss the first time around are granted

3   they're frequently granted with leave to amend.  I didn't mean

4   to suggest in our papers that we don't recognize that fact.

5       We simply filed the opposition because under the rules

6   when there's a motion to amend a complaint, as Paxfire

7   followed, a proposed amendment is attached.  It's not unusual

8   and it's not without support for a party to say in that

9   situation:  But your Honor, you shouldn't grant the motion to

10  amend because it's futile.  Then the standard is basically a

11  12(b)(6) standard.

12      So I understand what your Honor is saying.

13      THE COURT:  If that were true, that this particular

14  effort at amendment fails, it doesn't follow as a matter of law

15  that the first time that the Court has had an opportunity to

16  review the papers, the original motion to dismiss, the motion

17  to amend, before the Court has commented at all on the papers,

18  that right at the outset the defendant who attempted to file

19  counterclaims would be told sorry, that's it.  Or not even

20  sorry, that's it, your counterclaims dismissed with prejudice

21  with no opportunity to amend, period.

22      MR. DUMAIN:  I understand.  My only point, your Honor,

23  is there have been plenty of instances in this court and in

24  other courts within this circuit where judges have said either

25  the first instance no, your claim is so out to lunch that I'm

1    not even going to let you amend, that has happened, and other

2    instances where the court has said there is a proposed

3    amendment, no, I'm not going to allow you to amend.  And that

4    has gone up to the Second Circuit on an abusive standard and

5    that has been affirmed very frequently.

6            I understand what your Honor said.  I understand where

7    your Honor is coming from.  I will not trying to belabor it.

8    I'm not trying to change your Honor's mind on this.  I

9    apologize if your Honor thought there was too much motion

10   practice.  That was certainly not our intent.  But I don't

11   think that we multiply the proceedings by doing it this way,

12   because if we merely stipulated, fine, file your amendment, and

13   we made a motion to dismiss, I assume it would have been what

14   they filed as the proposed amendment.  We would have made our

15   motion to dismiss, and it would have been the same motion

16   practice and we would be in the same place.

17           So I understand what your Honor is saying, I just

18   wanted to explain what our thinking was.  The last thing I was

19   thinking was wanting to multiply proceedings here, since that's

20   what we claim that Paxfire has done.  And the last thing I want

21   to do the first time I'm before your Honor is give you the

22   impression that I'm not the kind of lawyer who can cooperate

23   with his adversaries, because that's not true.  And I was very

24   pleased this morning to be able to fax to your Honor a proposed

25   schedule that we were able to agree on, and rather promptly and

12VTFEIA

1    with good cooperation on both sides.

2           So I think I will you find going forward, even though

3    we may not agree on the facts of the merits, but that this is a

4    case that the lawyers are willing to cooperate.

5           THE COURT:  All right.  Thank you.

6           Mr. Grosso.

7           MR. GROSSO:  Thank you, your Honor.

8           I mostly wish to address the motion for leave to

9    amend.  I have reduced the number of counts from seven to four,

10   they are two counts of tortious interference with either

11   contract or business relationships.  There is the necessary

12   specificity as to how the relationships were damaged, as well

13   as with the requisite allegations of the essential elements.

14   The same is for two counts of defamation, one slander and one

15   libel, as well as damages.  Paxfire certainly has been damaged.

16   It is a shell of what it once was, and there's only one

17   full-time employee left at Paxfire.

18          With regard to the Rule 11 motion, I think I have --

19          THE COURT:  Before you leave that, the plaintiff says

20   that the plaintiff was not responsible, the plaintiff did not

21   conspire, aid, abet any false statements, and that the

22   allegations in the counterclaims are insufficient.

23          With respect to claims of defamation, they plainly

24   have to be pleaded with particularity as to what the defamation

25   was and what the plaintiff did.  The plaintiff says that even

12VTFEIA

 1   your amended counterclaims are insufficient, and that even the

 2   amended counterclaims wouldn't survive a Rule 11 motion.

 3            As I told Mr. Dumain, I intend to give you an

 4   opportunity to amend.  You're not bound by the proposed amended

 5   counterclaims that you attached to your papers.  And the

 6   standards that apply to the elements of claims of tortious

 7   interference are different from the elements of the claims that

 8   applied to the elements of the claims of defamation.

 9            You say that your amended counterclaims survive.

10   Mr. Dumain says they're futile.  This will be at least your

11   third opportunity, if you take it, to file amended

12   counterclaims, because I'm not holding you to the amended

13   counterclaims that were attached to your motion to amend.  When

14   you file amended counterclaims, will those be as good and as --

15   will they plead everything that you have to resist a motion to

16   dismiss?

17            MR. GROSSO:  They will -- the answer is yes.

18            THE COURT:  All right.  So you're not going to respond

19   to a motion to dismiss those counterclaims with another request

20   to file amended counterclaims.

21            MR. GROSSO:  My intent was to stand on these.

22   However, if the Court gives me an opportunity, more time has

23   passed, we have learned more, we'll be happy to submit what I

24   will call, without intending to jest, amended counterclaims,

25   without asking the Court to rule on the first amended

12VTFEIA

1    counterclaims.

2              THE COURT:  But I'm saying whatever you file in terms

3    of amended counterclaims, if there's a motion to dismiss those

4    counterclaims, you're not going to ask for another opportunity

5    to amend, are you?

6              MR. GROSSO:  Not unless something comes up that is

7    really spectacular.  And I think I have my -- we haven't

8    started discovery yet, and for that reason, I am not sure what

9    else will arise.  But I think that, based upon what I know now,

10   and based upon the allegations they made, that these

11   counterclaims survive.  And if the Court finds that they're not

12   sufficient, absent my learning something later, the answer is

13   no.

14             THE COURT:  All right.  Because if the amended

15   counterclaims are dismissed for failure to state a claim, they

16   will be dismissed with prejudice for failure to state a

17   claim -- third opportunity to state a claim.

18             All right.  Go ahead.

19             MR. GROSSO:  With regard to the Rule 11 motion, the

20   Court has obviously read it.  I have little more to add.  I

21   think that Paxfire and myself have conducted as thorough an

22   investigation as we could without conducting further discovery.

23   I personally have been in touch with people at EFF, people I

24   have known for many, many years, and learned of the

25   relationship between EFF and the firms that are here

1    representing Ms. Feist.  I have also, in addition to what is in

2    the papers, learned of a number of lawsuits around the country

3    involving EFF, and involve firms here, which make it clear that

4    there is a connection that EFF uses these firms in order to

5    pursue their policy issue.

6         Here, unfortunately, the allegations made by Ms. Feist

7    in the lawsuit as well as by EFF were false, but they were so

8    damaging that Paxfire has effectively been destroyed.  I think

9    that qualifies for both defamation and the damages of at least

10   $10 million that we have lost with an offer that was about to

11   come down by a matter of a few days.  And also the tortious

12   interference where there was the intent to keep Paxfire from

13   conducting its business model.

14        Both of those satisfy the torts that have been

15   alleged, and I think that they were filed in good faith.  It is

16   unusual, I will grant, that a class action plaintiff finds

17   herself at the receiving end of counterclaims.  But it is also

18   unusual that the plaintiff either directly or through her

19   attorneys is talking to the press and is talking to entities

20   that have already arranged to publish allegations that are not

21   true, some of which were actually retracted afterwards when I

22   opened up Paxfire's personnel through conversations with EFF

23   personnel.

24        So we have a situation here where there were false

25   statements advanced, the repercussions were severe, and Paxfire

12VTFEIA

1    is entitled to seek damages.  I think we have alleged all the

2    necessary essential elements in two categories of torts, and

3    the claims were filed in good faith.

4            THE COURT:  I should point out, as I usually -- this

5    is my first opportunity to talk to all of you.  I know one or

6    more people at Milberg and I think at Bingham McCutchen.  I

7    don't know any of the lawyers who are appearing before me, at

8    least so far as I know.  Nothing about that affects anything

9    that I do in the case.

10           All right.  Go ahead.

11           MR. GROSSO:  That is all I have to say about those two

12   motions.

13           I have gotten the message regarding motion practice,

14   and I would offer that I will withdraw the motion to strike

15   unless the Court is ready to rule on it.

16           THE COURT:  Well, I was, but it's a wise withdrawal.

17   Paragraphs 25 and 26?

18           MR. GROSSO:  Yes.

19           THE COURT:  All right.  You know, it really shouldn't

20   take the Court to point that out to lawyers about the

21   proliferation of motions.

22           All right.  Anything else?

23           MR. GROSSO:  No, your Honor.

24           THE COURT:  OK.  I'm prepared to rule.

25           The plaintiff has moved to dismiss defendant Paxfire's

12VTFEIA

1    counterclaims.  Defendant Paxfire has responded by seeking

2    leave to amend the counterclaims.  Defendant Paxfire's motion

3    to amend the counterclaims is granted.  The defendant Paxfire

4    may file amended counterclaims by February 13, 2012, and the

5    plaintiff may move or answer with respect to the counterclaims

6    by February 27, 2012.

7            The motion by the plaintiff to dismiss the

8    counterclaims is therefore denied as moot.  The motion is

9    directed at some claims that have been withdrawn and others

10   that have been amended.  Indeed, in response to the extensive

11   motions, if defendant Paxfire finds that it should amend its

12   counterclaims again before the counterclaims are actually

13   filed, it should do so.  If the plaintiff files a subsequent

14   motion to dismiss the amended counterclaims, any counterclaims

15   that are dismissed will be dismissed with prejudice.  See, for

16   example, *Abu Dhabi Commercial Bank v. Morgan Stanley & Company*,

17   08 Civ. 7508, 2009 WL 3346674 at 2, note 14 (S.D.N.Y.

18   October 15, 2009), "A dismissal with prejudice is generally

19   appropriate where a court puts a plaintiff on notice of a

20   complaint's deficiencies and the plaintiff fails to correct

21   those deficiencies after amendment."

22           The plaintiff has also filed a motion for Rule 11

23   sanctions directed to the original counterclaims.  The

24   plaintiff has made it clear that this motion is directed to the

25   original counterclaims because those counterclaims are the

12VTFEIA

1    operative document until the Court allowed the amended

2    counterclaims to be filed.  The Court has now allowed amended

3    counterclaims to be filed, and the original counterclaims are

4    no longer the operative document.

5           It should also be noted that the Rule 11 motion goes

6    far beyond the pleadings and asks the Court to make factual

7    determinations on what the evidence in the case will show, such

8    as whether the plaintiff acted with malice.  There is an

9    insufficient record to make such determinations at this point.

10   Moreover, such determinations are better made on an evidentiary

11   record after discovery.  Therefore, the motion for Rule 11

12   sanctions is denied without prejudice to renewal against the

13   amended counterclaims as such counterclaims are filed.  The

14   plaintiff may file a new Rule 11 demand on the defendant if

15   amended counterclaims are filed.

16          Defendant Paxfire also filed a motion to strike

17   paragraphs 25 to 27 of the plaintiff's complaint, pursuant to

18   Federal Rule of Civil Procedure 12(f), on the grounds that the

19   paragraphs are immaterial.  Defendant Paxfire has now withdrawn

20   that motion.  Therefore, defendant Paxfire's motion to strike

21   paragraphs 25 to 27 of the plaintiff's complaint is withdrawn.

22          Defendant Paxfire's motion to amend its counterclaims

23   is granted.  The plaintiff's motion to dismiss these

24   counterclaims is denied without prejudice as moot.

25          The plaintiff's motion for Rule 11 sanctions is denied

12VTFEIA

1   without prejudice.

2          The clerk is directed to close docket number 7, 12, 23

3   and 24.

4          So ordered.

5          I received a proposed schedule for the case which

6   provides for the close of fact discovery on June 29, 2012, the

7   close of expert discovery on October 15, 2012, dispositive

8   motions November 14, 2012, and the final replies on those

9   motions December 28, 2012.  The schedule is apparently agreed

10  to by the parties and appears to be reasonable.

11          Does anyone want to be heard on it?

12          MR. NEGER:  Yes your Honor, Peter Neger.

13          When we discussed the schedule yesterday, we did it on

14  the basis of a number of days without actually assigning

15  particular dates to the days.  And when I received Mr. Dumain's

16  letter this morning to your Honor, I noticed that the last date

17  for reply to dispositive motions is December 28.

18          THE COURT:  I thought that was very big of you all.

19          MR. NEGER:  Foolish, perhaps, your Honor.  I wonder if

20  the parties and your Honor would agree to extend the date by a

21  couple of weeks so that we don't have to all toil over the

22  Christmas holiday.

23          THE COURT:  Yes, sure.

24          MR. DUMAIN:  I noticed that, too, your Honor.  I'm

25  glad defendants brought that up.  Thank you.

12VTFEIA

1          THE COURT:  How about January 8?  That's a Tuesday.

2          MR. NEGER:  Could I suggest the end of that week, your

3   Honor?

4          THE COURT:  Yes.  January 11.

5          OK.  Does anyone else want to be heard on the order?

6   Otherwise I'm prepared to enter it as the scheduling order.

7          I take it that you have all had your Rule 26(f)

8   conference, you discussed issues of what discovery is going to

9   occur in the case, how you're going to deal with the issues of

10  electronically stored information and the like.

11         MR. DUMAIN:  We have, your Honor.  There are more

12  discussions that need to take place, but we have had initial

13  discussions and I'm confident that we can work things out.

14         THE COURT:  OK.  I don't generally refer cases to the

15  magistrate judge unless there is some reason for me to do it.

16  I like to keep track of the case so that if there are disputes,

17  you bring them to me in the first instance and I will try and

18  determine who is being reasonable and who is being

19  unreasonable, and oftentimes that deters disputes from

20  developing.

21         Anything else anyone wants to bring to my attention?

22         Before making a dispositive motion, you have to ask

23  for a premotion conference.  Under my rules these days, before

24  making a motion to dismiss you have to ask for a premotion

25  conference.  But you have already had a premotion conference.

12VTFEIA

1   If there's going to be a motion to dismiss the counterclaims,

2   if amended counterclaims are filed, and if the plaintiff wishes

3   to make a motion to dismiss the amended counterclaims, you

4   don't need another premotion conference for that.

5          All right.  Anything else?

6          MR. GROSSO:  May I bring it to the Court's attention,

7   as long as we're talking about motions to dismiss, I may be

8   filing a motion for judgment on the pleadings with regard to

9   the first count of plaintiff's complaint.  I assume that would

10  fall under the premotion conference rule.

11         THE COURT:  Yes.  Before making that motion, you have

12  to ask for a conference.  You should, before making that

13  motion, asking for a conference, you should at least have a

14  discussion with the plaintiff as to what the basis for the

15  motion is.  Motion for judgment on the pleadings, you ask me to

16  determine as a matter of law the first count in the complaint,

17  together with the answer, fails as a matter of law.  You all

18  are sophisticated lawyers.  Is the first count directed also at

19  RCN?

20         MR. NEGER:  Yes, your Honor.

21         THE COURT:  I haven't heard from RCN that they intend

22  to file a motion for judgment on the pleadings with respect to

23  count one.  Motion for judgment on the pleadings asks me to

24  accept the facts as undisputed.  If, after thinking about it,

25  you are going to make such a motion, ask for a premotion

12VTFEIA

1    conference.  OK.

2            MR. NEGER:  I don't want my silence to be taken as

3    acquiescence that we think that any of the counts in the

4    complaint are properly framed as against RCM, your Honor.  I

5    think that we would like to just go through discovery as

6    quickly as possible and then it's our intention to make a

7    motion for summary judgment on the whole complaint.

8            THE COURT:  OK.  I didn't take your silence as either

9    supporting or undermining the motion, I was just wanting to

10   find out where the parties stood.

11           OK.  Anything else?

12           MR. GROSSO:  There is one count that is somewhat

13   troublesome in that I'm confused as to whether Paxfire's named

14   in it.  Forgive me, I wasn't planning on raising it.

15           THE COURT:  It's OK.

16           MR. GROSSO:  I believe it's count three, but perhaps

17   Mr. Dumain can correct me if I'm wrong.  The caption is

18   directed only against RCM, but the charging language is phrased

19   "defendants."  Since there are only two defendants in the case,

20   I assume that Paxfire is one of them.  In my communications

21   with Mr. Seidman, I had been told that Paxfire is not a

22   defendant in that count.  I would like for them to clarify it,

23   and perhaps withdraw it if we're not a defendant.

24           MR. DUMAIN:  I don't understand the dispute, your

25   Honor.  He asked us, we told him Paxfire is not a defendant, as

12VTFEIA

1    he just said.  That's the fact, Paxfire is not a defendant in

2    count three.

3            THE COURT:  OK.  That's clear on the record.  If you

4    want to confirm it in a letter, you can, but it's clear on the

5    record.

6            MR. DUMAIN:  He already has a letter from us, your

7    Honor, saying that.

8            THE COURT:  OK.  Anything else?

9            OK.  Good afternoon all.

10            MR. NEGER:  Thank you, your Honor.

11                               o0o

12

13

14

15

16

17

18

19

20

21

22

23

24

25