**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BETSY FEIST,** individually, and on behalf of all others similarly situated,<br><br>                  Plaintiff,<br><br>    vs.<br><br>**RCN CORPORATION** and **PAXFIRE, INC.,**<br><br>                Defendants. | )<br>)<br>)  Case No. 11-cv-5436 (JGK)<br>)<br>)<br>)  **REPLY MEMORANDUM OF LAW IN**<br>)  **FURTHER SUPPORT OF BETSY**<br>)  **FEIST'S MOTION TO DISMISS**<br>)  **PAXFIRE'S FIRST AMENDED**<br>)  **COUNTERCLAIMS**<br>)<br>)<br>) |

At bottom, Paxfire's tortious interference and defamation claims rest on just two statements outside of the complaint itself, both of which are true: 1) that Ms. Feist's "suit . . . alleges the process violated numerous statutes, including wiretap laws" and 2) that "[t]he suit . . . claims that the two companies violated privacy safeguards enshrined in the Wiretap Act. . . ."

The only other allegedly defamatory statement plausibly attributable to Ms. Feist is the Complaint itself. Paxfire attempts to overcome the numerous protections that govern such judicial filings by claiming that the lawsuit is a sham. But Paxfire has not demonstrated that the action is objectively baseless, that Ms. Feist's sole (or even partial) motive for filing the complaint was to destroy Paxfire's business, or that Ms. Feist does not intend to prosecute her lawsuit (indeed, she remains a zealous representative of a putative class even after being countersued for $80 million).

Paxfire would like this Court to hold that a diligent investigation of her claims through, among other means, consultation with research organizations, amounts to a "conspiracy"; that demonstrably true statements about Paxfire's conduct are "defamatory" simply because the statements exposed improper conduct that impacted Paxfire's business; and that Ms. Feist can be deemed to have acted maliciously because she filed a complaint to protect her privacy rights. Paxfire, however, has neither alleged the facts nor cited the law that would support such a decision.

I.      **ARGUMENT**

      A.      **Paxfire Has Failed to Plead a Defamation Claim**

            1.      **Paxfire Has Not Identified Defamatory Statements**

Paxfire's failure to plead the alleged defamatory statements with the requisite

particularity is fatal to its claims.[1] In an attempt to overcome this deficiency, Paxfire points to a previously-filed brief and claims that Paxfire, in that brief, "expressly identified where each such false and defamatory statement appeared in Ms. Feist's Complaint." Opp. at 4 n.8. But Paxfire's allegations must be made in its pleadings.[2] And the cited brief does not "expressly identify" each statement, but instead includes citations to the Complaint together with a list of statements, none of which actually appears in the complaint verbatim, and many of which do not even summarize or paraphrase actual allegations from the Complaint. *See* ECF No. 39 at 21-22; *see* MTD at 7-12 (addressing inconsistencies between the purported defamatory statements and the *actual* published statements).

Paxfire points to three statements published in the *New Scientist*, but it does not provide any factual support for the argument that these statements were made by Ms. Feist *to* the *New Scientist*, nor could it, as one of the statements is expressly attributed to ICSI researchers, MTD at 7, a fact which Paxfire itself does not dispute. Nor does Paxfire dispute that the other two are fair and accurate reporting of the contents of a complaint, which are protected statements. *Id.*; *see also* MTD at 15.[3]

---

[1] *See* MTD at 5-7; N.Y. C.P.L.R. 3016(a) ("the **particular words** complained of **shall be set forth in the complaint**") (emphasis added).

[2] *Id.*; *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991) ("In considering a motion to dismiss for failure to state a claim, **a district court must limit itself to facts stated in the complaint**, or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.") (emphasis added).

[3] Paxfire also erroneously cites statements from its own counterclaims as statements "adopted as true or published" by Ms. Feist. Paxfire argues that Ms. Feist "quot[es] her complaint" regarding hijacking searches and claims she attributes the statements to researchers, but became liable for them once she "adopted as true and published" the statements. Opp. at 5-6. But the complaint never uses the word "hijacked," [sic] and Ms. Feist did not "adopt[] as true or publish[]" this statement. Ms. Feist cited Paxfire's own counterclaims for this assertion, pointed out that this language appears in the *New Scientist* article, and noted that the article expressly attributed the statement to researchers. MTD at 7.

2

### 2.   Paxfire's Attempt to Walk Away From Its Founder and Former CEO's Own Admissions Fails

Paxfire argues that Ms. Feist misconstrued Mr. Sullivan's "innocent" statements regarding "redirection" Opp. at 7-8, and disingenuously conflates two Internet operations that have distinctly and well-recognized differences: "redirection" and "packet switching." Ms. Feist accused Paxfire of "redirection" and Mr. Sullivan, Paxfire's founder and former CEO, admitted that this is what Paxfire does. He stated that "detection and redirection service, works by **intercepting** [the] DNS system's error message before it reaches the end user's computer," that it is "accomplished using . . . a separate computer or 'server' . . . [that] **monitors** the DNS system traffic . . . [and] **modifies** the DNS system's message," and Paxfire's business centers on the "**monetization or conversion** into revenue of such traffic **redirection**." MTD at 10. "Redirection" is, in this case, "nefarious conduct." *See* Opp. at 7.

Packet switching, in contrast, refers to protocols in which messages are divided into packets before they are sent. Each packet is then transmitted individually and can even follow different routes to its destination. Once all the packets forming a message arrive at the destination, they are recompiled into the original message.[4] Paxfire may be correct that "the entire Internet is based upon . . . network packet switching," Opp. at 7, but it is false that "redirection" and "packet switching" are synonymous. Rather, there are many well-recognized differences between "redirection" and "packet switching" but the central one for the purposes of this case is that packet switching is a legitimate practice that ensures that the message arrives at

---

[4] *See* http://www.webopedia.com/TERM/P/packet_switching.html (last visited 3/26/12)

the intended destination in the most efficient process. Redirection, in contrast, is, as alleged, an illegitimate practice that ensures that it does not.[5]

**B.      Ms. Feist's Statements are Protected by Various Privileges**

Paxfire has provided no authority or rational basis for treating a litigant's good-faith investigation of her claims as defamatory, or for unsettling long-standing privileges that protect communications concerning litigation of matters of public import.

Paxfire's alleged misconduct implicates the privacy and autonomy interests of millions of Internet users who interact on the equivalent of a public thoroughfare. The flow of Internet traffic is the topic of constant public debate. When discussing such uniquely public matters, "compelling public policy requires that the speaker be immune from suit . . . ." *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992). "[A] . . . defamation plaintiff suing on a statement that is 'arguably within the sphere of legitimate public concern' must demonstrate . . . that the defendant 'acted in a grossly irresponsible manner. . . .'" *Kamfar v. New World Rest. Group, Inc.*, 347 F. Supp. 2d 38, 46-47 (S.D.N.Y. 2004). "In each [New York case addressing the matter] . . . courts have found that . . . reliance on a thorough, responsible investigation negated the existence of gross irresponsibility as a matter of law." *Id.* at 47-48. Ms. Feist's reliance on her attorneys' investigation, and the information Ms. Feist's attorneys received from their consultants, are likewise inactionable.

Ms. Feist shared this bona fide public interest in Internet privacy and traffic flow with Jim Giles, a journalist who specializes in the "interface between science, technology, and

---

[5] Likewise, Paxfire's analogy that the Internet is like the postal service ("What you want to send is mixed together with everyone else's stuff, put in a pipe, transferred to another Post Office, and sorted again," Opp. at 7 n.18) also fails. Following that analogy, the ISP would deliver your "mail" to its intended recipient. Here, Paxfire interposes itself as a third party and, depending on the content, either: 1) forwards your mail to your intended recipient, and sends you the recipient's response



without ever identifying itself as being involved, or 2) never sends your message to the intended
recipient, and instead sends you, for its own profit, a response from a commercial third party.

society," who had previously reported on the use of ICSI's Netalyzr, and who was investigating Paxfire.[6]  Consequently, Ms. Feist's and Mr. Giles' communications also are protected by the common interest privilege. *See Anas v. Brown*, 269 A.D.2d 761, 762 (4th Dep't. 2000) (quotation omitted); *Kenny v. Cleary*, 47 A.D.2d 531, 532 (2d Dep't 1975) (statements made by lawyers on their clients behalf, to those with common interests, are protected by a qualified privilege.).

### C.     Paxfire Has Failed to Plead a Tortious Interference Claim

Paxfire does not dispute the bulk of Ms. Feist's arguments for dismissal of Paxfire's tortious interference claim. Rather than point the court to sufficient allegations, Paxfire argues that Ms. Feist had knowledge of Paxfire's business relationships. Opp. at 14. This is insufficient. Likewise insufficient, and untimely, is Paxfire's attempt to amend its complaint by "proffer[ing] to the Court" that its contracts are "not terminable at will." Opp. at 13. Such allegations belong in the complaint, not in an opposition to Ms. Feist's motion to dismiss. *See Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007); *Goldman*, 754 F.2d at 1065. Paxfire is now on its third attempt at stating a cognizable claim and has had notice of its pleading deficiencies through various briefs; Paxfire should not be allowed to amend its deficient complaint through its opposition brief.

### D.     Ms. Feist's Statements are Protected by *Noerr-Pennington*

#### 1.     The Alleged Statements Were Incident to the Litigation

Paxfire argues that the *Noerr-Pennington* doctrine is not applicable to the communications that Ms. Feist had with "the media," which "cannot in anyway [sic] be construed as petitioning the government for redress." Opp. at 15. But the only statements that Ms. Feist or her agents are alleged to have made were statements regarding her Complaint,

---

[6] *See* http://www.jimgiles.net/; *see also*, *Understanding your Netalyzr results,* The New Scientist, May 25, 2010, *available at* http://www.newscientist.com/article/dn18953-understanding-your-

which, of course, is a form of petitioning the government for redress. Even assuming these statements were false -- which they cannot be, as it is indisputable that Ms. Feist filed a lawsuit asserting wiretap claims -- such statements are incident to her lawsuit, and, as such, are protected. *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 594 (S.D.N.Y. 2010) (citations omitted); *see also* MTD at 21-23.

Paxfire tries to get around this by lumping Ms. Feist, EFF, and ICSI into a group and calling the group a "conspiracy." But it admits, as it must, that EFF and ICSI were engaged in precisely the type of activity that the *Noerr-Pennington* doctrine protects.[7] *See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 143 (1961) ("It is inevitable, whenever an attempt is made to influence legislation by a campaign of publicity, that an incidental effect of that campaign may be the infliction of some direct injury upon the interests of the party against whom the campaign is directed.").

### 2.      The Lawsuit Is Not a Sham

Paxfire argues that Ms. Feist's lawsuit is not covered by the *Noerr-Pennington* doctrine because it is a "sham litigation," Opp. at 15-16, but does not come close to showing, as it must, that Ms. Feist's case is "objectively baseless" and was brought with improper motive. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993).

Paxfire admits that its business model is structured to generate profit from redirecting End User's searches. *See, e.g.*, ECF 39-2, Ex. 3 (Declaration of Alan Sullivan); *See also* Cpl. ¶ 22. And the only alleged statement that Paxfire can point to is that Ms. Feist's suit "**alleges** that the process [of using Paxfire's technology] violated numerous statutes, including wiretapping

---

netalyzr-results.html.

[7] *See, e.g.,* CC ¶ 4 (EFF is "primarily involved in investigating, lobbying, and publicizing issues involving electronic privacy and civil liberties") and CC ¶¶ 37-39 (alleging that EFF and ICSI were concerned about the policy implications of Paxfire's business practices).

laws." *See* Dkt. No. 19-1, Ex. B (*New Scientis*t article) (emphasis added). This is a true statement about the allegations in the lawsuit that was filed the same day this article appeared. CC ¶ 49. "If resort to the courts is protected by *Noerr-Pennington*, then threats to do so, without more, are likewise immune from liability." *Aircapital Cablevision, Inc. v. Starlink Commc'ns Group, Inc.*, 634 F. Supp. 316, 326 (D. Kan. 1986) (citation omitted); *see* MTD at 15 (fair and accurate reporting of a litigation is inactionable).

Finally, improper motive cannot be inferred from the fact that Ms. Feist did not contact Paxfire before filing the lawsuit. This issue, and Paxfire's misplaced reliance on *Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358 (5th Cir. 1983), ECF No. 21 at 7, has been briefed. Opp. at 17. In short, *Coastal* does not hold – or even suggest, as Paxfire contends – that a failure to warn prior to commencing a suit is evidence of improper motive faith. Indeed, the court stated the opposite: that *Noerr-Pennington* protects lawsuits filed without warning, *and* it protects pre-litigation warnings. *Coastal*, 694 F.2d at 1367 (a "well-publicized threat to litigate wherever and whenever necessary" is "normally attendant upon effective litigation" and protected.); *see also Aircapital*, 634 F. Supp. at 317, 323-24 (applying *Noerr-Pennington* to short lived statements made on the same day complaint was filed, even though published statements were deemed "bully-type conduct" that harmed defendant's business).

### E.       Paxfire Has Failed to Plead a Conspiracy

Paxfire argues that Ms. Feist is vicariously liable for EFF and ICSI's conduct. Opp. at 4. First, Paxfire does not allege defamatory or tortious statements made by EFF or ICSI for which

Ms. Feist could be held responsible, even if a conspiracy existed.[8] Second, Paxfire's cited authority regarding conspiracy actually supports Ms. Feist's motion to dismiss. In *Mario v. Grupo Mundial Tenedora, S.A.,* 810 F. Supp. 2d 601, 610 (S.D.N.Y. 2011), this Court noted that "conspiracy is not an independent tort," "a plaintiff must establish first the underlying tort," then must establish an "agreement," "overt act," and "intentional participation." Paxfire has not established the underlying torts. And even when construed in the light most favorable to Paxfire, its sole allegation regarding the conspiracy -- a statement reading "meet the legal front!"-- provides no support for allegations of an agreement, or intentional participation in a conspiracy. A conspiracy "requires not simply joint or cooperative activity, but a **'meeting of the minds'** among the conspirators to accomplish some **shared purpose**." *Robinson v. Cnty of Yates*, --- F. Supp. 2d ----, 2011 WL 4439474, at *2 -3 (W.D.N.Y. Sept. 23, 2011) (*quoting Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009)) (emphasis added).[9]

Paxfire cites *Schaeffer v. Commissioner*, 779 F.2d 849 (2d Cir. 1985) for the proposition that "[o]ne who participates with others in a joint enterprise may be held . . . liable for all the actions taken by any participant in furtherance of the venture." MTD at 19. But Prosser &

---

[8] In ¶ 49(d) of its Counterclaims, Paxfire does allege that the EFF published a blog article regarding Paxfire. However, Paxfire yet again fails to specify any statements with the requisite particularity. Moreover, its own allegations make clear EFF's statements were true, and thus cannot be defamatory. For example, Paxfire disputes EFF's statements that Paxfire "collected a user's web searches and . . . search results" by stating that it "only logged a small subset of search queries" -- limited logging does not negate collection. It disputes statements that Paxfire could "directly monitor all searches . . . and . . .build up corresponding profiles" by saying that it "examined queries and responses" and "selected out and logged" only some -- likewise, the fact that Paxfire admits to examining and logging select queries only supports the statement that Paxfire had the ability to monitor and build profiles.

[9] "Broad allegations of conspiracy are insufficient; the plaintiff must provide some factual basis ... that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Id.* at *2. "[S]peculation, conjecture, and sweeping, unsupported statements concerning the . . . alleged collusion and motives therefor" will not suffice. *Id* at *3.; *see also* MTD at 23-24 (noting that conspiracy requires intentional participation, a preconceived common plan or purpose, a common agreement or understanding, a knowing agreement).

Keeton's *The Law of Torts*, cited by *Schaeffer*, states that "[i]t is . . .essential that <u>each particular</u> <u>defendant</u> . . . be proceeding tortiously . . . with the intent requisite to committing a tort. . . ." § 46 (5th ed. 1984) (emphasis added). As evidence of Ms. Feist's purported knowledge and intent, Paxfire states that Ms. Feist "learned the Netalyzr did not establish the things that she asserted it established about Paxfire," MTD at 19, but the complaint not only alleges that the Netalyzr identified redirection and attributed it to Paxfire, Cpl. ¶ 24 (graphic showing Netalyzr results that state "Your ISP appears to be using DNS to redirect traffic for one or more websites to third-party servers *in cooperation with a company called Paxfire.*"), but that Ms. Feist's counsel conducted investigation and consulted with experts in technology, Cpl. at 1. Paxfire cannot derive Ms. Feist's knowledge or motive from allegations of a conspiracy when a conspiracy itself requires that Ms. Feist acted with such knowledge and intent.[10]

## II.   CONCLUSION

Ms. Feist respectfully requests that Paxfire's counterclaims be dismissed with prejudice.

Dated: March 26, 2012

Respectfully Submitted,

     /s/ Peter E. Seidman

**MILBERG LLP**
Sanford P. Dumain
Peter E. Seidman
Melissa Ryan Clark
Charles Slidders
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
E-mail: sdumain@milberg.com

---

[10] Paxfire argues that Ms. Feist's "negligence" and whether she was "induced" by experts into bringing her lawsuit are questions of fact. Opp. at 5. Whether Ms. Feist's consultation with and reliance on experts in the field renders her "negligent" is a question of law. *See* above at § I.B. Moreover, Paxfire itself claims that Ms. Feist was "induced" into bringing her lawsuit. CC ¶ 41(d). Paxfire cannot seek to have its allegations accepted as true for purposes of this motion to dismiss, but ask the Court to disregard them when they facially defeat its claim.

10

pseidman@milberg.com
mclark@milberg.com
cslidders@milberg.com

-and-

**REESE RICHMAN LLP**

Michael E. Reese
Kim Richman
875 Avenue of the Americas, 18thFloor
New York, NY 10001
Telephone: (212) 579-4625
Facsimile: (212) 253-4272
E-mail:mreese@reeserichman.com
        krichman@reeserichman.com

*Attorneys for Plaintiff and Counterclaim Defendant*
*Betsy Feist*