# EXHIBIT 3

Confidential

## PAXFIRE SERVICES AGREEMENT

This Paxfire Services Agreement (the "**Agreement**") is entered into this 3rd day of April, 2007 ("**Effective Date**") by and between Paxfire, Inc. ("**Paxfire**"), a Delaware corporation, with its principal place of business at 462 Herndon Parkway, Suite 201, Herndon, Virginia 20170, and RCN Telecom Services, Inc., on behalf of itself and its affiliates, a Pennsylvania corporation, ("**RCN**") with its principal place of business at 196 Van Buren St., Suite 300, Herndon, VA 20170.

Paxfire and RCN may be referred herein to individually as a "**Party**" and collectively as the "**Parties.**"

WHEREAS, Paxfire and RCN believe it is in their mutual best interest to provide, on a non-exclusive basis, Paxfire's products and services to RCN' subscribers.

WHEREAS, by entering into this Agreement, RCN shall make available and promote Paxfire's products and services to its subscribers, and both Parties shall use commercially reasonable and continuing efforts to provide a positive End-User experience and optimize revenue produced for both Parties via the Paxfire products and services.

I. **Definitions.**

1.1 "**Advertising Sources**" are providers of advertising content whose content is included in the Paxfire Lookup Service.

1.2 "**Affiliate**" means any business entity in which either Party directly or indirectly controls at least fifty percent (50%) of the profits or voting rights.

1.3 "**Content**" is all content included in the Lookup Service including content from Advertising Sources, RCN Content, and Other Content.

1.4 "**End-Users**" is anyone who uses a RCN caching DNS server and the Paxfire Lookup Service provided by a PLE Appliance deployed by RCN or by Paxfire for RCN.

1.5 "**Gross Revenue**" is the revenue generated from the Paxfire Lookup Service that Paxfire receives from third-parties for the provision of Content, other than RCN Content, to RCN's End-Users through the Paxfire Lookup Service.

1.6 "**Keywords**" are characters, numbers, symbols, words, phrases or a combination of these in any character set or language, typed into a Paxfire-compatible Internet web browser's address or location bar or other search vehicle such as a web based toolbar or search-bar, which is intended to direct the End-User to a specific location or URL.

1.7 "**Lookup Terms**" include (i) any text which may be entered into a Paxfire-compatible Internet web browser's address or location bar, or included as a link on a web page, which does not resolve to the End-User's intended web address; (ii) any resolvable URL entered into a Paxfire-compatible Internet web browser's address or location bar, or included as a link on a web page, which does not produce the intended result due to the web destination's inoperability, or the web destination being otherwise deemed

undesirable by Paxfire for any reason; or (iii) any text intentionally or unintentionally entered into a Paxfire-compatible Internet web browser's address or location bar, or included as a link in a web page, which does not represent a URL resolvable by DNS, including but not limited to errors, typos, unresolvable URL's, Search Terms, Keywords, and Trademarked Keywords.

1.8 **"Net Revenue"** is the revenue generated from the Paxfire Lookup Service that Paxfire actually receives from third-parties for the provision of Content, other than RCN Content, to RCN' End-Users through the Paxfire Lookup Service ("Gross Revenue"), minus any Paxfire management fees. Paxfire management fees, if any, shall be related directly to obtaining Content and during the Term of this Agreement shall not exceed ten percent (10%) of Gross Revenue, unless otherwise agreed to in writing by the Parties.

1.9 **"Other Content"** is any content, other than content from an Advertising Source, non-revenue producing content from an Advertising Source, or RCN Content, used to enhance the Paxfire Lookup Service results. Other Content may directly produce revenue or it may merely enhance the End-Users experience.

1.10 **"Paxfire Lookup Service"** means the Paxfire service which provides search engine or directory results, hypertext links, online advertisements, text, graphics, audio, video, any other digital media, or any combination thereof, provided by Paxfire to the End-User and based on analysis of Lookup Terms. Promotional items which may or may not be related to the Lookup Terms, and Other Content designed to (i) enhance an End-User's experience; or (ii) increase revenue for the Parties, may also be included in the Paxfire Lookup Service results.

1.11 **"Paxfire Services"** means the Paxfire Lookup Service, or any other service or feature offered by Paxfire, whether available at the time of this Agreement or offered later at some point in the future. New Paxfire Services that may be offered in the future may incorporate some or all of the features and Content offered in the Paxfire Lookup Service.

1.12 **"PLE Appliance"** means any appliance, server or service (hardware or software), provided by Paxfire to RCN to facilitate the Paxfire Lookup Service.

1.13 **"Search Terms"** are characters, numbers, symbols, words, phrases or a combination of these, in any character set or language, typed into a Paxfire-compatible Internet web browser's address or location bar, or other search vehicle such as a web based toolbar or search bar which are intended to return a type or category of results and not a single specific destination or URL.

1.14 **"RCN Content"** is any content, provided by RCN, including but not limited to hypertext links, online advertisements, text, graphics, other content such as audio or video, or any combination of such which is included by Paxfire in the Paxfire Lookup Service in exchange for a commission, fee or other arrangement in accordance with any specifications set forth in Exhibit B to this Agreement.

1.15 **"Trademarked Keywords"** are Keywords which are the subject of a trademark registration issued by the United States Patent and Trademark Office or other trademark registry in a country that is a signatory to the Madrid Protocol, which are intended to direct the End-User to a specific location or URL.

## II. Paxfire Responsibilities.

A. **Paxfire Lookup Service.** The Paxfire Lookup Service shall enable the use of a Paxfire-compatible web browser's address bar or location bar, a web based toolbar or search-bar, or a link within a webpage, email, or other HTML file or document, as an input to the PLE. Paxfire shall provide Content designed to optimize revenue and provide a positive experience for End-Users. The specific Content delivered shall be at Paxfire's sole discretion; however, all Content delivered will be in material accordance with the templates found in Exhibit C, attached hereto and made a part hereof, which may be modified from time to time as mutually agreed to by the Parties. Both parties acknowledge that Paxfire's current third party search providers are Yahoo and InfoSpace. If RCN has a preexisting exclusive search contract with a third party search provider, Paxfire will utilize RCN's third party search provider if Paxfire has an agreement in place with such third party search provider. If Paxfire does not have an agreement in place with RCN's exclusive third party search provider, Paxfire will use commercially reasonable efforts to put into place an agreement with RCN's exclusive third party search provider for the provision of search results to RCN.

Additionally, Paxfire will, to the extent supported by Paxfire's third party search provider, block sponsored ads from the providers listed in Exhibit D (Competitor List).

B. **PLE Appliances.** Paxfire shall provide RCN with PLE Appliances at an RCN designated location for the purpose of fulfilling its obligations under this Agreement. These PLE Appliances shall remain the sole and exclusive property of Paxfire and shall be returned to Paxfire as soon as possible but in any event not later than fifteen (15) days after any request by Paxfire for their return. Other technical requirements are included in Exhibit A – Technical Requirements.

C. **License.** Subject to the terms of this Agreement and any Exhibits hereto, Paxfire grants RCN a non-exclusive, non-transferable, license during the Term to: (a) install PLE Appliances at facilities owned or controlled by RCN in the United States; (b) use any software contained within the PLE Appliance or otherwise provided to RCN by Paxfire; and (c) operate the PLE Appliances solely for processing Lookup Terms and providing Paxfire Services. RCN may modify specific configuration files on the PLE Appliance as specified in the Administrator's Guide but cannot modify system-only files. Application or operating system software may never be modified by RCN without the prior written consent of Paxfire.

D. **Revenue Optimization.** Paxfire shall use commercially reasonable efforts to continually optimize the revenue produced for both Parties via the Paxfire Lookup Service.

E. **Opt In and Opt Out.** The Paxfire Lookup Service will include a method for End-Users to opt-out or opt-in to the Paxfire Lookup Service, and in the future Paxfire will provide the ability for End-Users to opt-into new Paxfire Services which have been accepted and agreed to by the Parties.

F. **Reports.** Paxfire will provide to RCN, on a regular basis, web-based reporting of content delivered via the Paxfire Lookup Service. Monthly paper statements summarizing results will also be provided to RCN.

G. **Ownership.** Paxfire and/or its licensors own all intellectual property rights in and to (i) any editorial, text, graphic, audiovisual, and other Content, excluding RCN Content, that is served to End-Users from Paxfire via the Paxfire Lookup Service; or (ii) all software,

technology, materials, guidelines, and documentation of Paxfire and/or its licensors. RCN shall not acquire any right, title or interest in or to such Content other than RCN Content, except as provided herein. Paxfire grants no implied license to its intellectual property (including without limitation patents or patents pending) or that of Paxfire's third party suppliers, and all rights of Paxfire not expressly granted in this Agreement are reserved by Paxfire.

## III. RCN Responsibilities.

A. **Systems.** RCN will notify Paxfire within twenty-four (24) hours of any failure of a PLE Appliance or the Paxfire Lookup Service. RCN shall use commercially reasonable efforts to replace failed PLE Appliances within forty-eight (48) hours if spare PLE Appliances are on hand and within forty-eight (48) hours of receipt of spare PLE Appliances if they must be shipped to that location by Paxfire. The cost of any backup prepositioned PLE Appliances deemed necessary by Paxfire will be paid by Paxfire. RCN shall also provide all hardware, software, infrastructure, and networks necessary to provide DNS services.

B. **No Reverse Engineering.** RCN hereby acknowledges that any licenses granted by Paxfire in this Agreement, or any access to the Paxfire technology in any way does not include the right (i) to receive, use or make copies of the binaries, source code, or hardware for any products or services of RCN; (ii) to adapt, alter, modify, translate or create derivative works of any products or services or other properties described above of Paxfire; (iii) reverse engineer, decompile, disassemble, or otherwise attempt to reconstruct the binaries, source code, or hardware for, any products or services or other properties described above of such other Party; (iv) distribute or provide Paxfire technology to any third party; (v) provide a third party with any evaluation, benchmarking or performance data; or (vi) violate any other usage restrictions contained in the Paxfire installation instructions or release notes. Any third party software provided with Paxfire technology may be used only with that Paxfire technology.

C. **Content Delivery.** RCN will not deliver any Paxfire Lookup Service Content directly to End-Users, all Paxfire Lookup Service Content will be delivered to End-Users by Paxfire. However, and notwithstanding anything to the contrary, during the Term of this Agreement, RCN will not provide any third party content to end-users, which content is generated by means of a device or technology similar to that of the PLE Appliance and the Paxfire Lookup Services.

D. **Revenue Optimization.** RCN shall use commercially reasonable efforts to work with Paxfire to optimize the revenue produced for both Parties via the Paxfire Lookup Service.

## IV. PLE Appliances and Revenue Sharing.

A. PLE Appliances will be provided to RCN at Paxfire's expense. The number and timing of delivery of PLE Appliances will be at Paxfire's sole discretion. Any costs associated with the shipping, repair or replacement of PLE Appliances, including any propositioned replacement PLE Appliances, will be paid by Paxfire during the Term of this Agreement.

B. **Ownership and Maintenance.** All PLE Appliances will remain at all times the property of Paxfire. Should a PLE Appliance fail, Paxfire shall use commercially reasonable efforts to repair or replace it within five (5) business days of Paxfire receiving the failed PLE Appliance from RCN.

C. **Payments.** Paxfire shall be responsible for collecting all payments due from Advertising Sources and Other Content Sources. Paxfire shall pay RCN' share of the Net Revenues, as set forth on Exhibit B, in United States Dollars, within thirty (30) days of Paxfire's

receipt of funds from Advertising Sources and Other Content sources in accordance with any specifications set forth in an Exhibit B to this Agreement. Late payments of revenues to RCN will accrue interest at a rate of one percent (1%) per month, or the highest rate allowed by applicable law, whichever is lower. In addition to the audit rights set forth below, if RCN disputes any payment made under this Agreement, RCN must notify Paxfire in writing within one (1) year of any such payment. Failure to so notify Paxfire within the designated time frame will result in the waiver by RCN of any claim relating to any such disputed payment. Payment shall be calculated solely based on records maintained by Paxfire, and no other measurements, metrics, or statistics of any kind shall have any effect under this Agreement.

D. **Record Keeping**. Paxfire will maintain complete, clear and accurate records of all expenses, revenues and fees in connection with the performance of this Agreement. For the sole purpose of ensuring compliance with this Agreement, RCN will have the right to conduct a reasonable and necessary inspection of only those portions of the books and records of Paxfire which are relevant to Paxfire's performance pursuant to this Agreement; provided, however, that RCN shall not have the right to perform more than one (1) audit in any given calendar year unless a material deficiency (greater than ten percent (10%)) is discovered, in which case RCN may conduct up to two (2) audits in any given calendar year. Any such audit may be conducted after twenty (20) business days prior written notice to Paxfire. RCN shall bear the expense of any audit conducted unless a material deficiency (greater than ten percent (10%)) is discovered, in which case Paxfire shall pay the cost of the audit. Paxfire shall pay RCN the amount of any deficiency discovered by RCN within thirty (30) days after receipt of notice thereof from RCN and any such payments of deficiency shall accrue interest from the date of the actual deficiency until paid by Paxfire at a rate of one percent (1%) per month, or the highest rate allowed by applicable law, whichever is lower, unless the payment of any such deficiency is caused by a third party and not Paxfire, in which case Paxfire shall not be liable for any interest payments.

E. **Expenses.** Each Party shall be responsible for its own expenses, including any and all taxes, incurred in connection with the performance of its obligations hereunder, except where otherwise expressly provided in this Agreement.

V. **Term and Termination.**

A. The initial term ("Initial Term") of this Agreement shall begin on the Effective Date and continue for a period equal to Eighteen (18) months. The Agreement shall renew automatically for 12 months at the end of the Initial Term and each subsequent term, unless RCN or Paxfire provides written notice to the other of its intent not to renew at least ninety (90) days prior to the next renewal date. The Initial Term and subsequent renewal terms are referred to herein as the "Term".

B. At any time during the first ninety (90) days after the Paxfire Lookup Service is first activated, on all or a portion, of RCN's network ("Trial Period"), RCN may terminate this Agreement, without cause, by providing written notice of such termination to Paxfire. Any such notice of termination must follow the form specified below for official notices. RCN will receive all payments in accordance with Section IV(C) (Payments) and Exhibit B (REVENUE SHARE FOR PRODUCTS AND SERVICES) of this Agreement during the Trial Period.

C. At any time after the Trial Period, as defined above, both Parties shall have the right to terminate this Agreement by providing at least thirty (30) days prior written notice thereof in the event that, during the Term, the monthly Net Revenues paid by Paxfire to RCN are less than Twenty Five Thousand Dollars ($25,000.00).

D.  Paxfire may terminate this Agreement immediately by written notice providing documentation of a material breach of the provisions of Section II(C) (License) or Section III(B) (No Reverse Engineering) by RCN.

E.  Either Party may terminate this Agreement following thirty (30) days notice in writing to the other and opportunity to cure if the defaulting party has failed to cure the following defaults in such thirty (30) days: (i) if a Party materially defaults on any of its obligations under this Agreement; (ii) a receiver is appointed for the other Party's business or assets; (iii) the other Party begins bankruptcy proceedings; (iv) if any substantial part of either Party's property becomes subject to any levy, seizure, assignment, application or sale by any creditor or governmental agency and materially affects such party's ability to perform hereunder; or (v) either Party breaches the confidentiality provisions herein.

F.  RCN may, at its sole discretion, turn off, disable, or otherwise remove any or all PLE Appliances from RCN's network at any time during the Term of this Agreement if RCN reasonably determines that the PLE Appliances are materially and negatively impacting network performance or causing a material disruption or degradation of RCN's network services. RCN and Paxfire shall use commercially reasonable efforts to work together to correct any such deficiency within sixty (60) days.

G.  Upon termination or expiration of this Agreement for any reason, all rights and benefits granted herein shall immediately cease and RCN shall: (i) return the PLE Appliances to Paxfire together with all copies of documentation and other materials associated with the PLE Appliances, including but not limited to price lists, Paxfire Lookup Service results, advertising materials, and any other materials furnished by Paxfire to RCN; and (ii) cease using any Paxfire trademarks, trade names, or other proprietary rights in association with the services under this Agreement. Upon termination or expiration of this Agreement for any reason Paxfire shall within sixty (60) days pay to RCN its share of any and all unpaid Net Revenues hereunder up to the date of termination or expiration.

H.  Termination or expiration of this Agreement refers to the termination of all the Parties' respective commitments and obligations hereunder from and after the date of termination, but does not relieve the Parties of their obligations incurred prior to the date of termination.

## VI. **Confidentiality.**

Paxfire, its Affiliates or licensors retain all right, title and interest to the PLE Appliances and any and all related intellectual property and proprietary rights. The PLE Appliances and any software or documentation provided by Paxfire are protected by applicable copyright, trade secret, industrial and other intellectual property laws. Paxfire reserves any rights not expressly granted to RCN. This Section VI does not supersede or affect any separate Non-Disclosure Agreement between the Parties, if any.

"**Confidential Information**" means all proprietary or confidential information that is disclosed to the recipient ("**Recipient**") by the discloser ("**Discloser**"), and includes, among other things (i) any and all information relating to products or services provided by a Discloser, its financial information, any non-anonymous End-User information, network information, software code, flow charts, techniques, specifications, development and marketing plans, strategies, forecasts, or any other information which a reasonable person would believe to be proprietary or confidential; (ii) the PLE Appliance and any software or documentation provided with the PLE

Appliance; and (iii) the terms of this Agreement, including without limitation, pricing information. Confidential Information does not include information that Recipient can show: (a) was rightfully in Recipient's possession without any obligation of confidentiality before receipt from the Discloser; (b) is or becomes a matter of public knowledge through no fault of Recipient; (c) is rightfully received by Recipient from a third party without violation of a duty of confidentiality; or (d) is or was independently developed by or for Recipient.

Each Party acknowledges that Confidential Information may be disclosed to the other Party during the course of this Agreement. Each Party agrees that it will take reasonable steps, at least substantially equivalent to the steps it takes to protect its own proprietary information, during the Term, and for a period of three (3) years following expiration or termination of this Agreement, to prevent the duplication or disclosure of Confidential Information of the other Party. Notwithstanding the foregoing, Paxfire and RCN acknowledge and confirm that whether or not the transactions contemplated by this Agreement terminate, either Party may disclose Confidential Information without the consent of the other Party, to the extent such disclosure is required by law, rule, regulation or government or court order. In such event, unless otherwise required by the authority demanding disclosure, the disclosing Party will use reasonable efforts to provide at least five (5) business days' prior written notice of such proposed disclosure to the other Party. Further, in the event such disclosure is required of either Party under the laws, rules or regulations of the Securities and Exchange Commission or any other applicable governing body, such Party will (i) redact mutually agreed-upon portions of this Agreement to the fullest extent permitted under applicable laws, rules and regulations and (ii) submit a request to such governing body that such portions and other provisions of this Agreement receive confidential treatment under the laws, rules and regulations of the Securities and Exchange Commission or otherwise be held in the strictest confidence to the fullest extent permitted under the laws, rules or regulations of any other applicable governing body.

**VII.    Marks and Publicity.**

A.    **Ownership of Trademarks**. Each Party acknowledges the ownership of the other Party in the trademarks and logos ("Marks") of such other Party and agrees that all use of the other Party's Marks will inure to the benefit, and be on behalf, of the other Party. During the Term, each Party grants the other a non-exclusive, non-transferable limited right to use the other Party's Marks in accordance with VII. B. Promotional Materials/Press Releases. Upon expiration or termination of this Agreement, the Parties shall cease to use the other Party's Marks and shall immediately delete them from any and all materials. Either Party shall have the right to terminate this trademark license grant at any time for any reason upon written notice. Each Party acknowledges the ownership of the other Party's Marks and that this Agreement grants the Party no proprietary rights in or to the Marks. Each Party agrees not to do anything contesting or impairing the trademark rights of the other Party.

B.    **Promotional Materials/Press Releases**. Each Party will submit to the other Party, for its prior written approval, any press releases or marketing materials mentioning or referencing the other Party and/or its trade names, trademarks, or service marks.

**VIII.    Warranties.**

A.    Each Party warrants that: (i) it has the right to enter into this Agreement; (ii) no claim, lien, or action exists or is threatened against the Party which would interfere with the other party's rights under this Agreement; (iii) the execution and performance of this Agreement does not, and shall not, violate any agreements, rights or obligations between a Party and any third

party, and (iv) that it will be at all times in compliance with any and all laws and regulations related to the activities contemplated hereunder, and will refrain from engaging in any illegal, unfair, or deceptive trade practices.

    B.    RCN shall make no oral or written representations or warranties to End-Users or other third parties regarding the Paxfire Services.

    C.    Paxfire is and shall remain in compliance with all applicable licenses, permits, homologations and regulatory requirements, and will promptly comply with reasonable requests by RCN to evidence such compliance.

    D.    To the best of Paxfire's knowledge, the programs, software, PLE Appliances and the Paxfire Lookup Service will contain no Malicious Code at the time of delivery, and prior to delivery and/or access to the same by RCN or any End-User. Paxfire will take reasonable precautions to ensure that the programs, software, PLE Appliances and Paxfire Lookup Service are free of Malicious Code including the use of up to date, industry standard, virus checking software. For purposes of this Agreement, the term "Malicious Code" means a computer program or piece of computer code that intentionally corrupts computing systems, software, and/or computer networks, including any so-called "worms" or "viruses". The programs, software, PLE Appliances and Paxfire Lookup Services will not damage or materially alter or render inaccessible any RCN data or other hardware or software that interfaces with the software, PLE Appliances and Paxfire Lookup Services.

    E.    Paxfire does not warrant that the functions contained in the Paxfire Lookup Results will meet the requirements of RCN or End-Users or that the operation of the Paxfire Lookup Services or PLE Appliances will be error free. Paxfire is not responsible for problems that occur as a result of the use of the Paxfire Lookup Services in conjunction with other software or hardware that is incompatible with the PLE Appliances or resulting from End-User's or RCN' failure to maintain any equipment or operating system.

ALL PAXFIRE SERVICES PROVIDED HEREUNDER ARE PROVIDED "AS-IS". EXCEPT FOR ANY EXPRESS WARRANTIES SET FORTH HEREIN, PAXFIRE HEREBY DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTIBILITY, AND FITNESS FOR A PARTICULAR PURPOSE.

IX.    <u>Limitation of Liability</u>.

EXCEPT WITH RESPECT TO THE PARTIES' INDEMNITY OBLIGATIONS, AND/OR FOR A BREACH OF SECTION III(B) BY RCN, TO THE EXTENT PERMITTED BY APPLICABLE LAW, NEITHER PARTY, NOR ITS AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR ASSIGNS, SHALL BE LIABLE TO THE OTHER OR ANY THIRD PARTY FOR ANY SPECIAL, INCIDENTAL, PUNITIVE, CONSEQUENTIAL OR INDIRECT DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, LOST DATA, LOSS OF BUSINESS OR ANY OTHER PECUNIARY LOSS, ARISING IN ANY WAY OUT OF OR UNDER THIS AGREEMENT, WHETHER IN TORT, CONTRACT OR OTHERWISE, EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

WITHOUT LIMITING THE FOREGOING, NEITHER PARTY, NOR ITS AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR ASSIGNS, SHALL BE LIABLE TO THE OTHER, INCLUDING, FOR EXAMPLE, EITHER PARTY'S END-USERS,

RESELLERS, OR CUSTOMERS, FOR ANY DAMAGES ARISING IN ANY WAY OUT OF ITS RELIANCE ON OR USE OF TRAFFIC, INFORMATION, PRODUCTS, OR SERVICES PROVIDED IN THIS AGREEMENT OR THAT RESULT FROM MISTAKES, OMISSIONS, INTERRUPTIONS, DELETION OF FILES, ERRORS, DEFECTS, DELAYS IN OPERATION OR TRANSMISSION OR ANY FAILURE OF PERFORMANCE OF ANY KIND. THIS AGREEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY ENFORCEABLE RIGHT IN ANY THIRD PERSON, FIRM, CORPORATION, OR OTHER ENTITY.

EXCEPT WITH RESPECT TO THE PARTIES' INDEMNITY OBLIGATIONS, EACH PARTY'S LIABILITY FOR DIRECT DAMAGES UNDER THIS AGREEMENT OR RELATED TO THE PAXFIRE SERVICES PROVIDED HEREUNDER IS LIMITED TO THE AMOUNT OF NET REVENUE COLLECTED BY PAXFIRE THROUGH RCN DURING THE SIX (6) MONTH PERIOD PRIOR TO OR AFTER THE CLAIM AROSE, PROVIDED HOWEVER, THAT IN THE EVENT OF A BREACH OF SECTION III.B (NO REVERSE ENGINEERING), SECTION VI (CONFIDENTIALITY) OF THIS AGREEMENT, THE NON-BREACHING PARTY SHALL BE ENTITLED TO SEEK DIRECT DAMAGES AS PROVEN.

X.  **Indemnity.**

   A.  Each Party (the "Indemnifying Party") will, at its own expense, defend or, at its option, settle any third party claim brought against the other Party (the "Indemnified Party") and its parents, subsidiaries, affiliates, officers, directors, shareholders, and members, arising from, relating to, incurred in connection with (i) any and all damage, loss or destruction of any real or tangible personal property; or (ii) any and all loss or damage on account of injury to or death of any persons whomsoever (including employees and contractors of the undersigned), resulting from the acts or omissions of the Indemnifying Party, except to the extent that such claim is caused by the negligence or willful misconduct of the Indemnified Party.

   B.  Paxfire will also, at its own expense defend RCN against any infringement claim, demand, suit or action brought by a third party against RCN, its officers, directors, agents, employees, and Affiliates for any actual infringement or violation of any patent, trade secret, trademark or copyright attributable to RCN' use of the PLE Appliance or the Paxfire Lookup Service ("Claim"). Paxfire also shall indemnify RCN against any damages finally awarded against RCN, or settlement as a consequence of such Claim. Paxfire shall have sole control of the defense or settlement of the Claim. Notwithstanding anything to the contrary contained herein, Paxfire shall have no obligation whatsoever under this Section for any claim, demand, suit, or action with respect to any modifications, disassembly or reverse engineering of the PLE Appliance by or on behalf of RCN or any claim, demand, suit, or action arising out of the unauthorized combination, operation or use of the PLE Appliance or Paxfire Lookup Services by RCN. This Subsection states RCN's exclusive remedy and Paxfire's entire liability for infringement.

   C.  RCN will defend and hold harmless Paxfire, at its own expense, against any claim, demand, suit or action by a third party against Paxfire, its officers, directors, agents, employees, and Affiliates for any actual damages awarded against Paxfire directly attributable to any misstatements or misrepresentations made by RCN or RCN' employees or agents with respect to the PLE Appliance or Paxfire Services, except if caused by the acts or omissions of Paxfire.

D. A Party's obligations of indemnity and defense set forth above are conditioned on (i) the Indemnified Party having provided prompt written notice of the Claim to the Indemnifying Party sufficient for the Indemnifying Party to file its timely response; (ii) the Indemnifying Party having the sole right to conduct and control the defense and settlement of any such Claim at its discretion; (iii) the Indemnified Party providing assistance in connection with such Claim as reasonably requested by the Indemnifying Party; (iv) the Indemnified Party making no admissions in respect of such Claim without the Indemnifying Party's prior written consent; and (v) the Indemnified Party's compliance with all reasonable instructions relating to the Claim given by the Indemnifying Party.

## XI. Insurance.

Each Party shall maintain Commercial General Liability insurance including Products Liability with limits of no less than $2,000,000 for bodily injury and property damage, personal injury and advertisers' liability, and naming the other party as an additional insured. Upon request, each party shall provide to the other certificates evidencing the foregoing coverage and shall provide thirty (30) days prior written notice of any cancellation.

## XII. Customer Data and Privacy.

A. Both parties agree to comply with all laws regarding privacy, including, without limitation, the Gramm-Leach-Bliley Act and the Health Insurance Portability and Accountability Act, and agree to keep and treat any and all End-User specific information as Confidential Information. Notwithstanding the foregoing, the Parties agree that Paxfire will have the right to aggregate and compile anonymous data on End-Users' use of the Paxfire Services, and use such anonymous data for the purposes of optimizing performance and revenue produced by the Paxfire Lookup Service hereunder.

B. Each PLE Appliance will capture logging information which may be used by Paxfire (i) to track the performance of the Paxfire service; (ii) for the compilation of statistics, to reconcile PLE billing reports; and (iii) to enhance the End-User experience and increase revenue for the Parties. The PLE Appliance must be allowed to initiate a ssh connection to a remote Paxfire server outside the customer network so that secure copy (scp) can be used to push log files to a log processing server. Paxfire administrators will also manually push log files via scp when administering the box or troubleshooting.

## XIII. Miscellaneous.

A. **Entire Agreement.** This Agreement, including exhibits, completely and exclusively state the Agreement of the Parties regarding only to the particular subject matter contained herein, and supersede all prior agreements and understandings, whether written or oral, with respect to the subject matter of this Agreement. This Agreement shall not be modified except by a subsequently dated written amendment (e.g., Addendum) or appendix signed on behalf of Paxfire and RCN by their duly authorized representatives. In the event of any conflict between this Agreement and an exhibit, the terms of this Agreement shall control.

B. **Assignment.** Neither Party shall assign this Agreement in whole or in part, without first obtaining the other Party's written consent, such consent not to be unreasonably withheld; provided, however, either Party shall have the right without the other Party's consent to

assign this Agreement, in whole or in part, to any parent, subsidiary or affiliate of the assigning Party or to any person, firm or corporation which shall control, be under the control of, or be under common control with the assigning Party, or any corporation into which the assigning Party may be merged or consolidated or which purchases all, or substantially all, of the stock and/or assets of the assigning Party.

**C.** **Dispute and Governing Law.** ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THE PAXFIRE LOOKUP SERVICES OR THIS AGREEMENT, OR THE BREACH HEREOF, AND NOT CURED WITHIN THE CURE PERIOD SET FORTH IN SECTION V(D) HEREOF, WILL FIRST BE ESCALATED TO THE DIRECTOR LEVEL OF THE RESPECTIVE PARTIES. SHOULD RESOLUTION NOT OCCUR WITHIN FIFTEEN (15) BUSINESS DAYS OF SUCH ESCALATION, THE CONTROVERSY OR CLAIM WILL BE ESCALATED TO THE VICE PRESIDENT LEVEL OF THE RESPECTIVE PARTIES. IF THE CONTROVERSY OR CLAIM CANNOT BE RESOLVED IN GOOD FAITH WITHIN FIFTEEN (15) BUSINESS DAYS OF ESCALATION TO THE VICE PRESIDENT LEVEL, THE CONTROVERSY OR CLAIM MAY GO TO LITIGATION. This Agreement is governed by the substantive laws of the State of New York. Any proceeding brought by a party to enforce its rights under this agreement shall take place in a court of competent jurisdiction in the City of New York, State of New York. The choice of law rules of any other jurisdiction and the United Nations Convention on Contracts for the International Sale of Goods shall not apply.

**D.** **Severability.** Should any provision of this Agreement be invalid, ineffective, illegal, void, voidable or unenforceable in any respect under present or future laws, then such provision shall be treated as severed from this Agreement and the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

**E.** **No Waiver.** No failure or delay on the part of either Party in the exercise of any right, power or remedy under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or remedy preclude other or further exercise thereof, or the exercise of any other right, power or remedy.

**F.** **Relationship of the Parties.** The Parties are independent contractors under this Agreement and nothing in this Agreement authorizes a Party to act as an agent of the other or bind the other to any transaction, execute agreements or represent that it is in any way responsible for the other Party's actions or omissions. Both Parties acknowledge that this Agreement does not create an agency, joint venture, franchise relationship, legal relationship or partnership relationship between Paxfire and RCN. Each Party is solely responsible for its employees, including terms of employment, wages, hours, taxes and any required insurance.

**G.** **Notice.** Notices required or permitted to be made under this Agreement shall be Authenticated Notices, and absent alternative provisions to the contrary with regard to a specific provision of this Agreement, shall be addressed as follows,

If to RCN:

        RCN Telecom Services, Inc.
        ATTN: Vice President – Product & Pricing
        196 Van Buren St., Suite 300
        Herndon, VA 20170

with a copy to:    RCN Telecom Services, Inc.
        Attn: General Counsel

Confidential

Confidential

196 Van Buren St., Suite 300
Herndon, VA 20170

If to Paxfire:

Chief Operating Officer
462 Herndon Parkway, Suite 201
Herndon, VA 21070
USA

fax: 703-935-2623

or, such other address as each Party may designate in writing to the other Party for this purpose. Such notice shall be deemed to have been duly given and received: (i) on the day of delivery if hand delivered or delivered by commercial overnight carrier; (ii) on the fifth (5th) day after the date sent if sent by prepaid, certified mail; (iii) on the calendar day following the date of transmission if sent by facsimile accompanied by confirmation of successful delivery; or (iv) upon receipt if sent electronically.

H. **Force Majeure.** Neither Party shall be liable to the other for any loss or damage resulting from any cause beyond its reasonable control (a "Force Majeure Event") including, but not limited to, insurrection or civil disorder, war or military operations, national or local emergency, acts or omissions of government or other competent authority, compliance with any statutory obligation or executive order, industrial disputes of any kind (not involving a Party's employees), fire, lightning, explosion, flood, subsidence, weather of exceptional severity, equipment or facilities shortages which are being experienced by providers of telecommunications services generally, or other similar force beyond such Party's reasonable control, and acts or omissions of persons for whom neither party is responsible. Upon occurrence of a Force Majeure Event and to the extent such occurrence interferes with a Party's performance of this Agreement, such Party shall be excused from performance of its obligations (other than payment obligations) until the interference is removed, provided that such party uses commercially reasonable efforts to avoid or remove such causes of nonperformance as soon as possible.

I. **Survival.** Any provision that contemplates performance or observance subsequent to any termination or expiration of this Agreement (in whole or in part) shall survive any termination or expiration of the Agreement (in whole or in part, as applicable) and continue in full force and effect.

**PAXFIRE, INC.**

By: _____

Name: _President_

Title: _Mark Levy_

**RCN TELECOM SERVICES, INC.**

By: _____

Name: _MARK CHAN_

Title: _VP MARKETING / PRODUCT_

# EXHIBIT A – TECHNICAL REQUIREMENTS
## (SUBJECT TO CHANGE)

**IP Addressing.** Each PLE Appliance provided to RCN by Paxfire requires one IP address that is reachable from the internet either via a VPN connection or via a globally routable IP address.

**Connectivity.** Each PLE Appliance requires two 100BaseT/1000BaseT connections to be placed in series with the DNS server, and one additional 100BaseT/1000BaseT connection for the management interface. A total of three network interfaces must be connected.

**Rack Space.** Each PLE Appliance requires up to 2 (two) 19" Rack Units of vertical space for installation. These devices are logically placed in front of a specific DNS server.

**Power.** Current PLE Appliances require one NEMA 5-15 receptacle and use a maximum of 4A at 115VAC each, this may change as boxes are upgraded in the future.

**Cooling.** Each PLE Appliance shall be operated in an industry standard data center environment under controlled temperature and humidity. The current BTU rating on the PLE Appliance is a maximum of 1,500 BTU/hr.

**Remote Management.** PLE Appliances are remotely managed via Secure Shell (ssh). Each PLE Appliance will be programmed to allow only specific network address access to the administrator interface.

**Time Synchronization.** PLE Appliances will use authenticated Network Time Protocol (NTPv3 or 4) to keep synchronized within the Paxfire network. If an external NTP source is not allowed due to security policies, Paxfire requests running NTP our systems and a customer provided NTP server using a stratum 1 or 2 reference source.

**Alerts.** The PLE appliance can generate authenticated and encrypted SNMPv3 informs/traps to Paxfire operated management networks to alert operation personnel of any important events. This traffic will be generated using a source IP address of the PLE management interface and must be allowed out of the customer network to Paxfire operated network blocks.

**Technical Support.** Paxfire requires 24x7 access to technical support staff. Both Parties shall provide technical contact information to the other Party prior to PLE installation.

# EXHIBIT B – REVENUE SHARE FOR PRODUCTS AND SERVICES

New Paxfire Services or products and corresponding revenue share may be added to this Exhibit B from time to time as mutually agreed to in writing by the Parties.

**Revenue Sharing Details:**

1. RCN will receive fifty percent (50%) of Net Revenue received by Paxfire resulting from RCN End-Users' use of the Paxfire Lookup Service.

2. Paxfire and RCN will mutually agree on compensation to Paxfire for RCN Content delivered through the Paxfire Lookup Service.