```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
  BETSY FEIST,                                               :
                                    Plaintiff,               :
                                                             :         11 Civ. 5436 (LGS)
                      -against-                              :
                                                             :         **OPINION AND ORDER**
  PAXFIRE, INC.,                                             :
                                    Defendant.               :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/17/17

LORNA G. SCHOFIELD, District Judge:

  Plaintiff Betsy Feist brought this putative class action against Defendant Paxfire, Inc. ("Paxfire"), alleging Paxfire intercepted and disclosed her internet activity in violation of the Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510 et seq. (the "Wiretap Act"), and state law. At issue are Paxfire's two counterclaims for defamation under New York law based on communications made by Feist's attorneys with a journalist in the days before the Complaint was filed. Feist moves for summary judgment on Paxfire's counterclaims and objects to the order of Magistrate Judge Ronald L. Ellis limiting her damages claims as a discovery sanction. Paxfire moves for summary judgment on Feist's claims, which are limited to offsetting Paxfire's counterclaims. For the following reasons, Feist's motion for summary judgment on the counterclaims is granted. Consequently, Paxfire's motion and Feist's objection are denied as moot.

**I.     BACKGROUND**

  The following facts are taken from the parties' submissions and are undisputed unless otherwise indicated.

A.     **Background Regarding Alleged Defamatory Statements**

On August 4, 2011, Feist filed a putative class action against Paxfire alleging that its technology was being used to monitor, intercept and redirect consumers' internet searches. The Complaint asserts claims under the Wiretap Act and state law.

On August 1, 2011, three days before the Complaint was filed, Feist's attorneys were introduced by email to a reporter at *New Scientist* magazine, Jim Giles. The next day, Giles asked Feist's attorneys if they could "spare a few minutes to discuss [their] thinking regarding Paxfire's activities." These are the only communications in the record between Giles and Feist's attorneys on August 1 and 2.

On August 3, 2011, the day before the Complaint was filed, Michael Reese, one of Feist's attorneys, sent an email to Giles stating:

> I'm about to provide a draft complaint to you. First, I have to confirm that this[] [is] off the record and merely to allow you to see the complaint to get your story written. We may have some last minute changes to the complaint, so [we] will need to confirm that what goes in the story about the complaint is correct.

After Giles confirmed that he would "treat the draft complaint as off the record," Reese sent him the document "to be treated off the record." In addition to asserting claims under the Wiretap Act and state law, the draft complaint included a claim against Paxfire under the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 et seq. Reese included in his email a "sound bite" for Giles to use "on the record":

> [Reese] of Reese Richman LLP, a New York based law firm specializing in Internet class action consumer protection litigation stated that: "This litigation is important for the protection of consumers as well as the integrity of the Internet. My firm, along with co-counsel, Milberg LLP, will vigorously prosecute this matter to vindicate consumers' rights."

On August 4, 2011, Reese told Giles that the lawsuit would be filed that day. Giles then sent "the section of the article that summari[z]es [the] lawsuit," including that

Paxfire allegedly violated the Wiretap Act and the SCA.  Reese replied, "we have some revision[s] that need[] to be made because it is inaccurate right now."  Peter Seidman, another of Feist's attorneys, immediately sent an email attaching "a redline."  Because Giles had difficulty reading the attachment, Seidman confirmed that "we dropped the SCA claim" and included in the body of the email a revision of Giles' summary:

> Paxfire is named in the lawsuit alongside RCN,[1] based in Herndon, Virginia, one of the ISPs identified by the Berkeley team.[2]  The suit was filed by Reese Richman and Milberg, in the Southern District of New York[.]  The lawsuit claims alleges [sic] that the two companies violated the privacy safeguards provided for in the Wiretap Act, a 1968 law that regulates electronic communications and prohibits the interception, monitoring and disclosure of Internet transmissions[.]

All of these communications took place before 1:30 p.m. on August 4, 2011.  That evening, Giles sent an email to Feist's attorneys, stating the "story just went live, but we're editing it now to remove the SCA bit."  Paxfire has not included in the record any version of Giles' article that references the SCA.

Giles' article was published online several hours before the Complaint was filed.  The article contained the following statements, which included a portion of the "sound bite" that Reese had provided as well as the reporter's own language:

> Reese Richman, a New York law firm that speciali[z]es in consumer protection lawsuits, today filed a class action against one of the ISPs and *Paxfire, which researchers believe provided equipment used to hijack and redirect [internet users'] searches*.  The suit, filed together with Milberg, another New York firm, *alleges that the process violated numerous statutes, including wiretapping laws* [emphasis added to identify allegedly defamatory portions].
>
> . . .

---

[1] In February 2013, Feist voluntarily dismissed her claims against Defendant RCN Telecom Services, LLC.  Paxfire is the only remaining defendant.
[2] The "Berkeley team" refers to researchers at the International Computer Science Institute in Berkeley, California, whom Feist's attorneys retained as consulting experts.

3

> Paxfire is named in the lawsuit filed by Reese Richman and Milberg, alongside RCN, based in Herndon, Virginia, one of the ISPs identified by the Berkeley team. The suit, which was filed in the district court for the southern district of New York, claims that the two companies *violated privacy safeguards enshrined in the Wiretap Act,* a 1968 law that regulates electronic communications [emphasis added to identify allegedly defamatory portions].

Feist had previously authorized her attorneys to take the steps they deemed necessary to prosecute the litigation, including speaking to the media. She was unaware of the communications with Giles at the time they occurred.

### B.     Factual Background Regarding Alleged Damages

Around July 2011, Xerocole, Inc. ("Xerocole"), an internet company, began negotiating with Paxfire about purchasing Paxfire's assets. As Paxfire's president, Mark Lewyn, testified, the CEO of Xerocole "had a term sheet that was approved by [Xerocole's] Board of Directors" that Lewyn "believe[d] . . . was $10 million for Paxfire."

The day after the Complaint was filed, the CEO of Xerocole sent Lewyn an email stating, "I saw the good and not so good press today. I did like your WSJ article. But in seeing the class action lawsuit notice, our board has asked me to hold off on our intended offer for the time being." The CEO attested that "[o]n or shortly after August 4, 2011, Xerocole learned about the lawsuit brought by [Feist] against Paxfire from the publicity surrounding the lawsuit. Because of this lawsuit and the publicity, Xerocole decided that Paxfire was no longer a viable acquisition candidate, and we never made the offer." Similarly, Lewyn testified that within "a matter days" after August 4, "Xerocole formally withdrew [its] offer and specifically cited th[e] lawsuit as the reason for it because they didn't want to get mixed up in a legal matter like this."

### C.     Procedural Background Regarding the Counterclaims

Paxfire filed its answer and initial counterclaims against Feist on August 31, 2011. On February 13, 2012, Paxfire filed amended counterclaims asserting claims for tortious interference

4

with contracts, tortious interference with business relationships, as well as the two defamation claims at issue on this motion.

By oral opinion on September 18, 2012, Judge John G. Koeltl, who previously was assigned this case, granted in part and denied in part Feist's motion to dismiss the counterclaims. He held, among other things, that any statements in Feist's complaint are protected by the absolute privilege for statements made in the course of a judicial proceeding, but that the absolute privilege does not extend to statements made to the reporter prior to the filing of the lawsuit because he is not a party to the litigation. (Judge Koeltl's decision preceded the New York Court of Appeals' decision in *Front v. Khalil*, 28 N.E.3d 15 (N.Y. 2015), which is discussed below and holds that a qualified privilege applies to such communications.) He therefore denied the motion to dismiss the defamation counterclaims with respect to statements Feist's attorneys made to the reporter before the lawsuit was filed. The remaining counterclaims had been previously withdrawn, or were later dismissed by stipulation.

The two surviving counterclaims, entitled "Defamation: Slander" and "Defamation: Libel," contend that the defamation took place between August 1 and noon on August 4, 2011, through statements made by Feist, "directly or through her agents and attorneys," to reporter Jim Giles of *New Scientist*. The counterclaims identify three allegedly defamatory statements: (1) that Paxfire "hijacked" searches of millions of internet users; (2) that Paxfire violated numerous statutes, including wiretapping laws; and (3) that Paxfire violated "privacy safeguards enshrined" in the 1968 Wiretap Act. Paxfire alleges that the defamation harmed its reputation, resulting in the lost business and the unrealized acquisition by Xerocole worth at least $10 million.

After the January 2012 decision on the motion to dismiss the counterclaims, discovery proceeded for the next four years under the supervision of Judge Ellis. On January 19, 2016,

5

Feist agreed not to move for class certification and Paxfire agreed to limit its damages to $10 million arising from (1) the alleged withdrawal by Xerocole of an offer to purchase Paxfire as a result of the allegations she made "to the press and in her complaint" and (2) accusations of Paxfire's illegal conduct constituting defamation per se.  As reflected in a January 22, 2016, Order, Feist agreed to limit her damages to offset any liability on Paxfire's counterclaims.

## II.  STANDARD

Summary judgment is appropriate where the record before the court establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58–59 (2d Cir. 2016).  Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor.  *See Anderson*, 477 U.S. at 255.

## III.  DISCUSSION

Paxfire's counterclaims allege that Feist's attorneys' statements to Giles were defamatory and that Feist is liable for the defamation under New York law.  Summary judgment is granted in favor of Feist on Paxfire's defamation counterclaims because the statements to Giles are privileged as a matter of law, and because Paxfire has not adduced evidence from which a

6

reasonable jury could conclude that the allegedly defamatory statements caused Paxfire's alleged damages.

"New York law allows a plaintiff to recover for defamation by proving that the defendant published to a third party a defamatory statement of fact that was false, was made with the applicable level of fault, and either was defamatory per se or caused the plaintiff special harm, so long as the statement was not protected by privilege." *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011); *accord Rodriguez v. Daily News, L.P.*, 37 N.Y.S.3d 613, 614 (2d Dep't 2016). A claim for libel has an added element that the defamatory statement must be in writing. *See DiBella v. Hopkins*, 403 F.3d 102, 110 (2d Cir. 2005) (applying New York law).

### A. The Privilege for Statements Pertinent to Anticipated Litigation Applies

The statements made by Feist's attorneys to Giles just prior to the filing of the Complaint are privileged as a matter of law and are not the proper subject of a defamation claim. "A privileged communication is one which, but for the occasion on which it is uttered, would be defamatory and actionable." *Park Knoll Assocs. v. Schmidt*, 451 N.E.2d 182, 184 (N.Y. 1983). "[I]t is well-settled that statements made in the course of litigation are entitled to absolute privilege . . . ." *Front*, 28 N.E.3d at 18. In *Front*, the New York Court of Appeals recently addressed the "open question" of whether a privilege attaches to "statements made by attorneys *prior to* the commencement of litigation." *Id.* at 16 (emphasis added). The Court of Appeals in *Front* ruled that a qualified rather than absolute privilege applies. *Id.* Specifically, the Court held that an attorney's statements made before litigation has commenced are privileged if (1) the attorney has "a good faith basis to anticipate litigation" and (2) the statements are "pertinent to that anticipated litigation." *Id.* at 20. The Court expressly declined to consider the motive of the

7

attorney making the statement in evaluating the applicability of the privilege. *Id*. at 19–20 (expressly rejecting a "general malice standard").

As explained below, in the circumstances of this case, the privilege identified in *Front* applies as a matter of law to the statements made by Feist's attorneys to Giles. Thus, "no cause of action for defamation can be based on [these] statements." *Id.* at 16.

### 1. Pertinence

This case involves attorney communications with the press about the imminent filing of a complaint, to enable prompt reporting about the commencement of litigation as soon as the complaint is filed. Feist's attorneys' statements were pertinent to the anticipated litigation. "Pertinenc[e] is a question of law for the court to decide." *Mosesson v. Jacob D. Fuchsberg Law Firm*, 683 N.Y.S.2d 88, 89 (1st Dep't 1999) (citing *Bensky v. Warden of City Prison*, 179 N.E. 257, 259 (N.Y. 1932)). The standard is "extremely liberal" such that "any doubts are to be resolved in favor of pertinence." *Flomenhaft v. Finkelstein*, 8 N.Y.S.3d 161, 164 (1st Dep't 2015) (internal quotation marks omitted). "If the alleged defamatory words used by counsel or a party in the course of a judicial proceeding may possibly be pertinent they are privileged. It is only when the language used goes beyond the bounds of reason and is so clearly impertinent and needlessly defamatory as not to admit of discussion that the privilege is lost." *Bensky*, 258 N.Y. at 258–59. "[T]he statement must be so outrageously out of context as to permit one to conclude, from the mere fact that the statement was uttered, that it was motivated by no other desire than to defame." *Martirano v. Frost*, 255 N.E.2d 693, 694 (N.Y. 1969). "The burden is upon the [party alleging defamation] to conclusively, and as a matter of law, establish the impertinency . . . of the statement." *Grasso v. Mathew*, 564 N.Y.S.2d 576, 578 (3rd Dep't 1991).

The Second Circuit held that *Front* bars a defamation claim based on statements contained in an anticipated court filing that an attorney transmits to a member of the press. *Tacopina v. O'Keeffe*, 645 F. App'x 7, 8 (2d Cir. 2016) (summary order) ("Even crediting [the plaintiff's] allegation that [the attorney defendant] shared the affidavit with the Daily News before filing it in court, [the plaintiff] has still not sustained his burden of showing that the statements were not pertinent to a good faith anticipated litigation."). The Court rejected as "meritless" the argument that statements contained in an expected court filing were not "pertinent to a good faith anticipated litigation," explaining that the attorney had "tendered a carbon copy of the affidavit to the Daily News" before it was filed. *Id.*

The version of the complaint Feist's attorneys transmitted to the reporter is pertinent to this litigation. The draft complaint substantively tracks the version that was filed. That the draft complaint included an SCA claim, which was omitted in the filed version, does not defeat the pre-litigation privilege. The gravamen of the wrong alleged was the same in the draft complaint and the complaint that was filed. The draft complaint was relevant to a litigation that was anticipated, and was ultimately filed.

Feist's attorneys' "sound bite" comment is also pertinent to the litigation because it concerns the very subject of the lawsuit, namely, Paxfire's violation of federal law. *See* 1 Robert D. Sack, *Sack on Defamation* § 8:2.1 at 8–16 (4th ed. 2016) ("[I]f the statements are no more than recitations of matter in pleadings that are themselves privileged, the statements or delivery of the pleadings to the press may be covered by the [litigation] privilege."); *cf. Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 521 (S.D.N.Y. 2013) ("Comments that essentially summarize or restate the allegations of a pleading filed in an action are the type of statements that fall within § 74's [fair reporting] privilege.").

Paxfire argues that *Front* is inapplicable because it is limited to statements between parties and their lawyers. This argument is unavailing. First, while the communications at issue in *Front* were among lawyers and potential parties, the New York Court of Appeals did not explicitly require the recipient of the challenged statements to be a lawyer or potential party. *See Front*, 28 N.E.3d at 16–17. The Second Circuit summarily rejected this interpretation when it applied *Front* to an attorney's communications to the press. *See Tacopina*, 645 F. App'x at 8 (citing *Front*, 28 N.E.3d at 18–20). As noted, *Front* simply requires the statements to be pertinent to litigation anticipated in good faith. 28 N.E.3d at 18.

Second, Feist's attorneys' statements, although not made to someone directly involved in the action, are pertinent in these particular circumstances. The New York Court of Appeals has stated that the privilege that protects statements made in the course of litigation "can extend to preliminary or investigative stages of the process, particularly where compelling public interests are at stake." *Rosenberg v. MetLife, Inc.*, 866 N.E.3d 439, 443 (N.Y. 2007). Publication of a newly filed lawsuit alleging the improper interception of internet searches by "hundreds of thousands, if not millions" of putative class members raises such a public interest. Paxfire concedes that the content of the statements at issue were of legitimate public concern, noting that it must prove that Feist acted in a grossly irresponsible manner in order to prove defamation, and citing *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 102 (2d Cir. 2000), for the proposition that the "gross irresponsibility standard has been held to apply to a private plaintiff speaking on matters of public concern." Dkt. No. 237 at 32. Judge Koeltl reached the same conclusion on the motion to dismiss, finding that the gross irresponsibility standard applies to this matter of public concern. *See* Dkt. No. 75 at 28–29; *see also New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d

10

1071 (C.D. Cal. 2003) (observing that questions of internet privacy and security that a software application addressed were matters of legitimate public concern).

Third, applying the pre-litigation privilege furthers the public interest in the prompt reporting of litigation upon filing, which derives from the right of access to legal filings enjoyed by the public and the press.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) ("In addition to the common law right of access, it is well established that the public and the press have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents." (internal quotation marks omitted)); *cf. Rosenberg*, 866 N.E.2d at 442 (observing that "[p]ublic policy mandates that certain communications, although defamatory, cannot serve as the basis for the imposition of liability in a defamation action" and, in turn, a qualified privilege may be appropriate for statements that "foster[]" a "public interest"). A "presumption of immediate access" applies to court filings by the public "under both the common law and the First Amendment." *Lugosch*, 435 F.3d at 113.  "[A]ccess should be immediate and contemporaneous . . . . The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny . . . ." *Id.* (second alteration in original) (quoting *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994)).  In this case, the pre-litigation privilege serves the public's interest in prompt reporting of legal filings.  Feist's attorney, Reese, informed Giles that he would provide a draft complaint "merely to allow [Giles] to see the complaint to get [his] story written" and that he would "need to confirm that what goes in the story about the complaint is accurate."  He sent the draft one day before the Complaint was filed and only after Giles confirmed he would treat the draft as "off the record."  Feist's attorney also sent revisions to Giles to correct "inaccura[cies]" in his reporting on Feist's claims.  A qualified privilege is appropriate given that

11

the statements by Feist's attorneys, which focused on the allegations of Feist's complaint, had the effect of ensuring Giles' reporting was prompt and accurate.

### 2. Good Faith Basis to Anticipate Litigation

The second requirement for the applicability of the privilege is also satisfied. A reasonable jury could only conclude that Feist's attorneys had a good faith basis to anticipate litigation when they communicated with Giles, and Paxfire does not argue otherwise. The evidence makes clear that Feist's attorneys communicated with Giles *because* they were planning to file the lawsuit. Feist's attorneys sent their first email to Giles the day before the Complaint was filed. That email transmitted the draft complaint, which included nearly identical allegations (with one additional cause of action) as the version filed less than 24 hours later. Feist's attorneys were explicit in the emails that the substance of their communications was not to be published until after the lawsuit was commenced. They provided the draft complaint and their comment for the express purpose of permitting the reporter to write the story and have it ready for publication as soon as the Complaint was filed.

There is no genuine factual dispute that Feist's lawsuit, which has been pending for over five years, surpasses the minimal merits threshold to show good faith. "[T]his is not a case where plaintiff failed to move forward, or where any court before which plaintiff and defendant have appeared has suggested, even remotely, that the underlying action is a sham . . . ." *Lacher v. Engel*, 817 N.Y.S.2d 37, 41 (1st Dep't 2006). The parties have submitted multiple expert reports and voluminous submissions in support of and opposition to the merits of Feist's claims against Paxfire. Paxfire concedes in part that Feist has shown that Paxfire intercepted communications and instead argues that its conduct is protected by two statutory safe harbors,

the "ordinary course of business" exception, 18 U.S.C. § 2510(5)(a)(ii), and the consent exception, 18 U.S.C. § 2511(2)(d). Both defenses require fact-bound inquiries.

The statements by Feist's attorneys to Giles are privileged as a matter of law under *Front*. Accordingly, summary judgment is granted on the defamation counterclaims.[3]

### B. Insufficient Evidence of Causation

Summary judgment is also warranted because there is no genuine factual dispute that the statements by Feist's attorneys to Giles caused Paxfire special damages or are per se actionable. *See Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014) (applying New York law and noting that an element is "special damages or *per se* actionability").

#### 1. Special Damages

Paxfire fails to raise a genuine factual dispute that the statements at issue -- i.e., the emails to Giles on August 3 and 4, as distinct from the lawsuit itself -- caused special damages. Special damages are "the loss of something having economic or pecuniary value." *Liberman v. Gelstein*, 605 N.E.2d 344, 347 (N.Y. 1992). Pursuant to stipulation, Paxfire's only special damages are the $10 million it allegedly lost when the Xerocole transaction did not materialize.

As previously noted, any statements contained in the Complaint itself are not actionable because they are protected by the absolute privilege. Further, the statements contained in Giles' article became non-actionable as soon as the Complaint was filed because New York Civil Rights Law § 74 applies a privilege for any "fair and true report" of a judicial proceeding. New

---

[3] This decision assumes without deciding that Feist can be held responsible for the allegedly defamatory statements of her attorneys. If that is the case, then any privilege that protects those statements extends to Feist as well as her attorneys. *See Broome v. Biondi*, No. 96 Civ. 0805, 1997 WL 83295, at *5 (S.D.N.Y. Feb. 10, 1997) (applying pre-*Front* law but nonetheless recognizing that the "draft complaint is qualifiedly privileged as to the [counterclaim defendants'] attorney, and as to the [counterclaim defendant]"); *Bensky*, 179 N.E. at 259 ("If a publication is privileged as to counsel, it is privileged as to his client . . . .").

York law recognizes an exception to § 74's fair reporting privilege where a plaintiff files a "sham pleading . . . solely as a vehicle for publicizing false allegations," which "amount[s] to a 'perversion of judicial proceedings.'" *Capsolas v. Pasta Res., Inc.*, No. 12 Civ. 5533, 2013 WL 703670, at *2 (S.D.N.Y. Feb. 26, 2013) (quoting *Williams v. Williams*, 246 N.E.2d 333, 337 (N.Y. 1969)). For the reasons stated in Section III.A.2 of this decision, there is no factual basis to conclude that Feist's complaint is a sham pleading. *See Lacher*, 817 N.Y.S.2d at 41. Thus § 74 bars any defamation claim for statements contained in Giles' article after the Complaint was filed, including any statements attributable to Feist's attorneys. *See Lan Sang*, 951 F. Supp. 2d at 521 ("The absolute privilege under Section 74 also extends to the release of background material with regard to the case, so long as the statement is a substantially accurate description of the allegation, including where the description of the case is offered by a party's legal counsel." (internal quotation marks and citation omitted)). Accordingly, the only statements that are pertinent to causation are Feist's attorney's statements contained in Giles' articles prior to the Complaint being filed, assuming *arguendo* that they may be attributable to Feist through her attorneys.

Paxfire fails to adduce evidence that would allow a reasonable jury to conclude that the communications with Giles and the publication of the article in the few hours before the Complaint was filed caused Xerocole to withdraw its offer. Paxfire's CEO testified that Xerocole said the lawsuit caused it to withdraw its offer; nothing in his testimony indicates that Giles' article or Feist's attorney's statements to Giles had any effect on Xerocole. Similarly, Paxfire adduced no evidence that Xerocole's CEO or any other employee saw Giles' article before the Complaint was filed. Xerocole's CEO's statement that the company withdrew its offer "[b]ecause of this lawsuit and the publicity," without more, is insufficient to create a

genuine factual dispute that the statements of Feist's attorneys in the Giles' article caused Xerocole to decide before the Complaint was filed to withdraw its offer.

### 2. Defamation Per Se

Paxfire also fails to raise a genuine factual issue that the statement accusing it of violating a criminal statute was actionable defamation per se in this case. New York law generally presumes that damages will result from "'statements that fall within' established categories of *per se* defamation." *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011) (quoting *Liberman*, 605 N.E.2d at 347). Yet "[w]hile a pleading of special damages is not necessary in a case of defamation per se, there must be something that addresses the element of injury to reputation." *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 412 (1st Dep't 2011); *accord Massre v. Bibiyan*, No. 12 Civ. 6615, 2014 WL 2722849, at *4 (S.D.N.Y. June 16, 2014) (applying New York law). Where, as here, a defamation "plaintiff is a corporation, a cause of action for libel per se requires the plaintiff to establish that the publication injured its business reputation or its credit standing." *Sandals Resorts Int'l*, 925 N.Y.S.2d at 412. In this case, there is insufficient evidence that the publication of Giles' article caused injury to Paxfire's reputation. *See id.* There is no evidence that Xerocole or any other third party saw Giles' article before the Complaint was filed. Paxfire also cites no evidence that its reputation was injured during the few hours between Giles' article being published and the Complaint being filed. Thus, Paxfire's claim for damages based on any statements that were defamatory per se fails as a matter of law.

Because the pre-litigation privilege and the lack of evidence pertaining to causation and damages are dispositive, Feist's other arguments for dismissal are not addressed.

## IV.     CONCLUSION

For the foregoing reasons, Feist's motion for summary judgment on Paxfire's counterclaims is GRANTED.  Feist's claims are DISMISSED as moot in light of her stipulation to limit recovery on her claims to the amount necessary to offset Paxfire's recovery on its counterclaims.  Consequently, Paxfire's motion for summary judgment on Feist's claims is DENIED as moot.  Feist's objection to the Judge Ellis's discovery sanctions that preclude her from introducing certain evidence in support of her claims is also DENIED as moot.

The Clerk of Court is respectfully directed to close the motions at Docket Numbers 207 and 219 and close the case.

Dated: January 17, 2017
          New York, NY


_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**